PUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

MACKENTOCH SAINTHA,

*Petitioner,*

v.

MICHAEL B. MUKASEY, Attorney
General of the United States,

*Respondent.*

No. 06-2304

On Petition for Review of an Order
of the Board of Immigration Appeals.
(A25-448-372)

Argued: November 1, 2007

Decided: February 14, 2008

Before GREGORY and DUNCAN, Circuit Judges, and
James A. BEATY, Jr., Chief United States District Judge
for the Middle District of North Carolina, sitting by designation.

Petition for review dismissed in part and denied in part by published
opinion. Judge Duncan wrote the opinion, in which Judge Gregory
and Judge Beaty joined.

## COUNSEL

**ARGUED:** John R. Ingrassia, PROSKAUER & ROSE, L.L.P.,
Washington, D.C.; Elizabeth Hutton McGrail, CAPITAL AREA
IMMIGRANTS' RIGHTS COALITION, Washington, D.C., for Peti-
tioner. Janice Kay Redfern, Office of Immigration Litigation,

UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Peter D. Keisler, Assistant Attorney General, Civil Division, Linda S. Wernery, Assistant Director, Office of Immigration Litigation, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

---

**OPINION**

DUNCAN, Circuit Judge:

The petitioner, Mackentoch Saintha ("Saintha"), was admitted to this country as a refugee and was subsequently granted lawful permanent resident status. When later convicted of an aggravated felony and placed into removal proceedings, Saintha sought relief pursuant to Article 3 of the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment (the "CAT"), Dec. 10. 1984, 23 I.L.M. 1027, 1465 U.N.T.S. 85, and under section 209 of the Immigration and Nationality Act (the "INA"), codified at 8 U.S.C. § 1159(c). An Immigration Judge ("IJ") found Saintha entitled to deferral of removal under the CAT, but ineligible for adjustment of status and a waiver of inadmissibility under the INA. On review, the Board of Immigration Appeals ("BIA") found insufficient evidence to sustain the CAT claim, but agreed with the IJ that Saintha was ineligible for the relief he sought under the INA. Saintha's petition asks us to review both BIA determinations. For the reasons that follow, we dismiss the portion of Saintha's petition requesting relief under the CAT for lack of jurisdiction pursuant to 8 U.S.C. § 1252(a)(2)(C), and we deny the petition as to Saintha's requests for adjustment of status and a waiver of inadmissibility under the INA.

I.

Saintha, along with his family, fled his native Haiti in 1994 to escape political violence. He was subsequently admitted to the United States as a refugee pursuant to 8 U.S.C. § 1157. In October 1995, he sought and was granted an adjustment to lawful permanent resident ("LPR") status under section 209(a) of the INA, 8 U.S.C. § 1159(a), retroactive to his admission date. After multiple convictions for petty

larceny, Saintha was convicted of robbery and sentenced to fifteen years' confinement.[1] As a result of this aggravated felony conviction, the government charged him with removability under 8 U.S.C. § 1227(a)(2)(A)(iii). *See id.* ("Any alien who is convicted of an aggravated felony at any time after admission is deportable.")

In the ensuing removal proceedings, Saintha sought deferral of removal pursuant to the implementing regulations of the CAT. *See* 8 C.F.R. §§ 208.16(c), 208.17(a), 208.18(b)(1). To be entitled to deferral of removal, the applicant must "establish that it is more likely than not that he [will] be tortured if removed to the proposed country of removal."[2] 8 C.F.R. § 208.16(c)(2). An act is not "torture" for CAT purposes unless it is "inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 208.18(a)(1).

Saintha argued at his removal hearing that, if he were returned to Haiti, he would more likely than not be tortured with the acquiescence of the Haitian government in retribution for the involvement of his stepfather, Edy Lorisme, in the political party Organisation Populaire de Bon-Repos ("OPB").[3] In support of Saintha's claim, Lorisme testified that his sister was beaten and killed in 1988 because of her affiliation with OPB. Saintha and Lorisme also both testified to an instance in 1992 when Lorisme's political opponents came to the family's home in the early hours of the morning and ordered Lorisme outside. According to Saintha, Lorisme did not leave the house and the group dispersed without further incident. After this episode, however,

---

[1]Ten years of Saintha's sentence were subsequently suspended.

[2]The implementing regulations define torture as "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind." 8 C.F.R. § 208.18(a)(1).

[3]OPB was formed to oppose Jean-Claude "Baby Doc" Duvalier and his supporters, including General Cedras—the leader of the Haitian government at the time OPB was founded.

Lorisme sought and obtained refugee status for himself and his family, and they fled Haiti for the United States.

Saintha and Lorisme further testified that their friends and relatives continued to be victimized by politically motivated violence after their departure. They explained that shortly after the family's arrival to the United States, a friend and political ally and his wife were killed in Haiti in retaliation for their political activities. They also alleged that Lorisme's political enemies forced Lorisme into hiding when he visited Haiti in 2003, and that these enemies subsequently burned Saintha's grandmother to death. Shortly after Lorisme's return to the United States, the family learned that a cousin of Saintha's had also been killed. Although unaware of the details of the cousin's death, Saintha and Lorisme insisted that she was killed for her political beliefs.

As to the Haitian government's involvement, Lorisme testified that he did not know "what power [the Haitian police] have . . . to protect" his son, and that the police did not protect anyone. J.A. 123. Saintha submitted as additional evidence the State Department's 2005 Country Report on Human Rights Practices in Haiti. The Report indicated that there was widespread political corruption in Haiti, that prison conditions were substandard, and that the Haitian police were guilty of human rights violations and did little to protect Haitian citizens.

During the removal proceedings, Saintha also sought relief in the form of an adjustment of status under 8 U.S.C. § 1159(a), and in conjunction with that adjustment, a waiver of inadmissibility under § 1159(c). Saintha sought such relief because, though he had previously been granted LPR status, the imminent removal order would strip him of such status and with it the consequent right to remain legally in the United States indefinitely as a lawful permanent resident. *See* 8 C.F.R. § 1001.1(p). Furthermore, even if he were granted deferral of removal under the CAT, he still would not have regained his permanent resident status. *See* 8 C.F.R. § 208.17(d). Such deferral, if granted, would also be subject to termination in the future if an immigration judge determined that it was no longer likely that Saintha would be tortured in the country to which he would be removed. *See id.* In light of these limits to CAT relief, Saintha therefore sought to adjust a second time to LPR status under § 1159(a) in order to remain

in the United States permanently. His multiple criminal convictions, however, rendered him inadmissible, and therefore ineligible for adjustment of status. *See* 8 U.S.C. § 1182(a)(2)(B) ("Any alien convicted of 2 or more offenses . . . , regardless of whether the conviction was in a single trial or whether the offenses arose from a single scheme of misconduct and regardless of whether the offenses involved moral turpitude, for which the aggregate sentences to confinement were 5 years or more is inadmissible."). Accordingly, he was unable to adjust his status absent a discretionary waiver of inadmissibility, pursuant to § 1159(c), from either the Secretary of Homeland Security or the Attorney General.

On April 10, 2006, the IJ found Saintha removable as charged. The IJ then granted his request for deferral of removal under the CAT, but found him ineligible for an adjustment to LPR status and a waiver of inadmissibility under the INA. These rulings prevented Saintha from being immediately removed to Haiti, but left open that possibility in the future should the country conditions improve. Both Saintha and the government appealed their respective unfavorable rulings to the BIA.

In an opinion issued November 16, 2006, the BIA reversed the IJ's decision finding Saintha eligible for relief under the CAT, but affirmed the IJ's decision as to Saintha's request for adjustment of status and waiver of inadmissibility. Regarding Saintha's CAT claim, the BIA found (1) no clear error in the IJ's findings of fact; (2) that the Haitian government and Lorisme's enemies would have the ability to learn of Saintha's return to Haiti; and (3) that it was more likely than not that Lorisme's enemies would seek to torture Saintha. The BIA nevertheless denied the claim, finding that, "upon considering the record in its totality there is insufficient evidence . . . that the Haitian government would acquiesce in [Saintha's] torture." J.A. 292.

As to Saintha's requests for relief under the INA, the BIA found that under the plain language of § 1159(a)(1) a refugee who has already acquired LPR status is precluded from subsequently re-adjusting to LPR status. Inasmuch as Saintha could not seek adjustment of status, he was likewise ineligible to seek a waiver of inadmissibility under § 1159(c). Saintha filed a timely appeal and obtained a temporary stay of removal on January 9, 2007.

## II.

Saintha first argues that the BIA erred in finding insufficient evidence to conclude that the Haitian government would likely acquiesce in his torture, and in finding him ineligible for deferral of removal under the CAT as a result. Before we reach the merits of that argument, however, we must first determine whether we have jurisdiction to consider Saintha's claim. The government contends that we do not, asserting that because Saintha is removable by reason of an aggravated felony conviction and has not, in its view, raised a constitutional claim or question of law, the INA precludes judicial review of his claim. We consider the issue de novo. *See Rux v. Republic of Sudan*, 461 F.3d 461, 467 (4th Cir. 2006).

## A.

Courts generally do not have jurisdiction to review final orders of removal against aliens charged with removability by reason of having committed aggravated felonies. *See* 8 U.S.C. § 1252(a)(2)(C); § 1227(a)(2)(A)(iii). Because Saintha has conceded that he was convicted of an offense that constituted an aggravated felony, we would ordinarily be without jurisdiction to consider his claims. The REAL ID Act ("REAL ID"), however, provides a limited exception to this jurisdictional bar. Pub. L. No. 109-13, § 106(a)(1)(A)(iii), 119 Stat. 231, 302-23 (codified in part at § 1252(a)(2)(D)). Section 1252(a)(2)(D) of the Act allows for "review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals."

This court has previously recognized the narrow scope of this exception. *See Higuit v. Gonzales*, 433 F.3d 417, 419 (4th Cir. 2006) (holding that REAL ID "confers upon courts of appeals a narrowly circumscribed jurisdiction to resolve constitutional claims or questions of law."). We have held, consonant with the other circuit courts of appeal, that even after the passage of REAL ID, we still lack jurisdiction to review factual determinations of the BIA. *See Jean v. Gonzales*, 435 F.3d 475, 480 (4th Cir. 2006); *Conteh v. Gonzales*, 461 F.3d 45, 63 (1st Cir. 2006) ("This proscription extends to review of the BIA's factual findings as to credibility, evidentiary weight, and satisfaction of a correctly framed burden of proof."); *see also* H.R.

Rep. No. 109-1268, at H2873 (2005), available at 2005 WL 1025891 (legislative history of the REAL ID Act explaining that "[t]he purpose of [the REAL ID Act] is to permit judicial review over those issues that were historically reviewable on habeas—constitutional and statutory—construction questions, not discretionary or factual questions."). Thus, before we can reach the merits of Saintha's arguments, we must first decide the threshold question of whether his petition raises a constitutional claim or a question of law such that the REAL ID exception applies, or instead raises only factual questions, stripping us of our jurisdiction over the petition.

B.

Saintha's petition seeks review of the BIA's rejection of his CAT claim. As noted above, the BIA found it probable that the enemies of Saintha's stepfather would seek to torture Saintha upon his return to Haiti. The BIA further found, however, that "upon considering the record in its totality there is insufficient evidence for us to conclude that it is more likely than not that the Haitian government would acquiesce in [his] torture." J.A. 292. The crux of the jurisdictional question here, then, is whether this BIA determination with respect to Haitian government acquiescence is properly characterized as factual or legal in nature.

Saintha wisely does not argue that his challenge raises a constitutional claim or a pure question of law. Rather, he asserts that this case presents a mixed question of law and fact, and that we retain jurisdiction as to the legal component of that question. *See* H.R. Rep. No. 109-1268, at H2873 (2005), available at 2005 WL 1025891 ("When a court is presented with a mixed question of law and fact, the court should analyze it to the extent there are legal elements, but should not review any factual elements."). The government predictably disagrees with that characterization of the BIA's determination. Saintha's claim, the government asserts, does not concern a "question of law" because such questions, for REAL ID purposes, include only the narrow category of issues regarding statutory construction.[4] Instead, the govern-

---

[4]There is disagreement among the circuits regarding whether questions of law are limited to questions of statutory interpretation or also include mixed questions of law and fact. We need not resolve the issue here because our precedent dictates that we treat Saintha's claim as a factual inquiry.

ment reasons, Saintha's claim is merely "an attempt to circumvent [Section 1252(a)(2)(C)'s] jurisdictional bar by inviting this [c]ourt to reweigh the evidence relevant to a [BIA] factual determination." Respondent's Br. at 41.

Although we have never addressed the precise question of our jurisdiction to review, post-REAL ID, an aggravated felon's petition challenging a BIA determination regarding government acquiescence in torture for CAT purposes, we do not have to look far to find compelling guidance as to the appropriate analytical framework. This court has previously concluded that BIA factual determinations include those which we would review, if we were to have jurisdiction, under the "substantial evidence" standard.[5] *See Menghesha v. Gonzales*, 450 F.3d 142, 147 (4th Cir 2006) (referring to the substantial evidence standard as "the extremely deferential standard of review applicable to [BIA] factual determinations."); *see also Haoua v. Gonzales*, 472 F.3d 227, 231 (4th Cir. 2007) (same). That is, we can look to the standard of review we would apply if we were to have jurisdiction to inform whether a given BIA determination is factual or legal in nature.

The legislative history of the REAL ID Act confirms precisely this point:

> Factual questions include those questions that courts would review under the "substantial evidence" or 242(b)(4)(B) [codified as 8 U.S.C. § 1252(b)(4)(B)] standard, reversing only when a reasonable factfinder would be compelled to conclude that the decision below was erroneous.

H.R. Rep. No. 109-1268, at H2873 (2005), available at 2005 WL 1025891. Combining our precedent, as bolstered by the legislative history, with the § 1252(a)(2)(D) proscription, we conclude that BIA determinations that we would ordinarily review under the substantial evidence standard are necessarily factual in nature, and therefore

---

[5]In contrast, legal determinations include those which we would review de novo. *See Menghesha v. Gonzales*, 450 F.3d 142, 147 (4th Cir. 2006).

beyond our jurisdiction to review when the petitioner has been convicted of an aggravated felony.

The question of jurisdiction here, then, turns on whether the BIA's determination as to Haitian government acquiescence would ordinarily be reviewed for substantial evidence. Our precedent declares that it would be. *See Dankam v. Gonzales*, 495 F.3d 113, 124 (4th Cir. 2007) ("We review the denial of relief under the CAT for substantial evidence."); *Haoua*, 472 F.3d at 232-33 (applying the "substantial evidence" standard of review to a BIA finding concerning the likelihood that the petitioner would suffer torture at the government's consent or acquiescence). Because we review determinations regarding governmental acquiescence for substantial evidence, and because we only apply that standard to factual determinations, the BIA's CAT determination here is properly characterized as factual, not legal, in nature.[6] *Id.*, *see also Dragenice v. Gonzales*, 470 F.3d 183, 185 (4th Cir. 2006) (referring to the IJ's conclusion "that the evidence did not establish a likelihood of torture" as a "factual determination"). Section 1252(a)(2)(C) of the REAL ID Act prohibits our review of such factual determinations of the BIA, and we are thus unable to review Saintha's petition on the merits.

Notwithstanding this conclusion, dictated by our precedent, Saintha repackages his primary argument in various ways in an attempt to create a reviewable legal question where there is none. For example, Saintha professes to challenge the BIA's interpretation of the term "acquiescence," claiming that the BIA "fail[ed] to recognize the inherent difference between a government that cannot control torture by private actors and a government that 'acquiesces' by turning a blind eye toward such conduct." Reply Br. at 13. As Saintha acknowledges, however, the BIA properly concluded that willful blindness could

---

[6]Oddly, Saintha appears at times to concede just this conclusion. For example, he acknowledged that the case presented a factual determination in his argument before the IJ, J.A. 74, and again in this appeal, *see* Reply Br. at 11 (referring to the BIA's conclusion regarding the likelihood of government acquiescence as a "factual determination" properly reviewed under the "'substantial evidence' standard of review"). Because he elsewhere argues the opposite, however, we have not treated these apparent concessions as dispositive.

constitute acquiescence, but ultimately rejected his claim because the evidence did not demonstrate that the Haitian government would likely remain willfully blind to his risk of torture. *See* J.A. 292-93; Petitioner's Br. at 16. In actuality, then, Saintha is asking us to reach the merits of his CAT claim and reweigh the evidence as to the BIA's acquiescence determination; not, as he claims, presenting the legal question of the proper interpretation of "acquiescence."

Saintha next attempts to craft a question of law by suggesting that the BIA did not afford the appropriate deference to the facts as determined by the IJ. Saintha later admits, however, that the BIA cited the appropriate legal standards in its decision, and he points to no specific language in the BIA's opinion where those standards were misapplied. His argument, in substance, is simply that the BIA did not show the appropriate deference to the IJ by disagreeing with the IJ's government-acquiescence determination. This argument too, then, devolves into another circuitous attack on the BIA's factual determination regarding acquiescence, over which, as we have already concluded, we lack jurisdiction.

Saintha finally seeks to create a justiciable question by arguing that "the BIA misapplied its own precedent with respect to evaluating [Saintha's] risk of torture." Reply Br. at 14. Rather than identifying BIA precedent that would mandate a different conclusion in his own case, however, Saintha only posits vaguely that the BIA should be required to distinguish his case from prior BIA decisions. Again, because Saintha does not point to any standard that the BIA misapplied, this argument would have us reweigh the evidence in Saintha's case as compared to the weighing done in past BIA cases, which is precisely the type of factual re-hashing we must not do.

We decline to stretch reason to locate questions of law in what we have properly analyzed as a factual determination. As this court has previously recognized, "[w]e are not free to convert every immigration case into a question of law, and thereby undermine Congress's decision to grant limited jurisdiction over matters committed in the first instance to the sound discretion of the Executive." *Higuit v. Gonzales*, 433 F.3d 417, 420 (4th Cir. 2006). Accordingly, we look to the true nature of Saintha's arguments and conclude that they do not fall within one of the REAL ID Act's rubrics. Thus, because Saintha is

removable by reason of an aggravated felony conviction, § 1252(a)(2)(C) prohibits our evaluation of his CAT claim. We therefore dismiss this portion of the petition for review for lack of jurisdiction.[7]

### III.

Saintha next challenges the BIA's determination that he is statutorily precluded from seeking adjustment of status and a waiver of inadmissibility under § 1159 of the INA. This claim turns squarely on an issue of statutory interpretation. We therefore have jurisdiction to review this aspect of the petition pursuant to the REAL ID Act. *See* 8 U.S.C. § 1252(a)(2)(D).

We review de novo the BIA's decision on a question of law. *See Blanco de Belbruno v. Ashcroft*, 362 F.3d 272, 278 (4th Cir. 2004). As the BIA is the agency charged with administering the INA, however, its interpretations of the statute are entitled to deference as articulated in *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984). *See INS v. Aguirre-Aguirre*, 526 U.S. 415, 424 (1999). Pursuant to *Chevron*, the plain meaning of the statute controls if the provision in question is unambiguous. 467 U.S. at 843. If, however, the statute is silent or ambiguous with respect to the specific issue before us, the question for this court becomes whether the BIA's interpretation "is based on a permissible construction of the statute." *See id.* A petitioner asking the court to find a BIA interpretation impermissible faces a substantial burden, as judicial deference "is especially appropriate in the immigration context where officials exercise especially sensitive political functions that implicate questions of foreign relations." *Aguirre-Aguirre*, 526 U.S. at 425 (internal quotations omitted).

---

[7]We note briefly that even if we were not stripped of jurisdiction by § 1252(a)(2)(C)-(D) to hear Saintha's claim, it would likely fail because there exists substantial evidence to support the BIA's determination. Saintha, failed to make the requisite showing that the Haitian government was aware of, let alone willfully blind to, the violence suffered by his family members and his stepfather's political allies. *See* 8 C.F.R. § 208.18. Thus, we would likely conclude that the BIA relied on substantial evidence in finding a lack of government acquiescence.

As discussed above, Saintha had become a lawful permanent resident, entitled to remain in the United States indefinitely. By virtue of his aggravated felony conviction, however, he is now removable, and entry of a removal order would strip him of his LPR status. In the course of his removal proceedings, Saintha sought, as an alternative and in addition to CAT relief, an adjustment of status back to that of a lawful permanent resident. The criteria governing adjustment of status are provided by section 209 of the INA, codified at 8 U.S.C. § 1159:

### § 1159. Adjustment of status of refugees

(a) Criteria and procedures applicable for admission as immigrant; effect of adjustment.

(1) Any alien who has been admitted to the United States under [8 U.S.C. § 1157] . . .

(A) whose admission has not been terminated . . .

(B) who has been physically present in the United States for at least one year, and

(C) *who has not acquired permanent resident status*,

shall, at the end of such year period, return or be returned to the custody of the Department of Homeland Security for inspection and examination for admission to the United States as an immigrant . . . .

(2) Any alien who is found upon inspection and examination by an immigration officer pursuant to paragraph (1) or after a hearing before an immigration judge to be admissible (except as otherwise provided under subsection (c)) as an immigrant under this Act at the time of the alien's inspection and examination shall . . . be regarded as lawfully admitted to the United States for permanent residence as of the date of such alien's arrival into the United States. . . .

(b) . . . .

(c) . . . . [T]he Secretary of Homeland Security or the Attorney General may waive [the application of any inadmissibility provision] with respect to [any alien seeking adjustment of status under this section] for humanitarian purposes, to assure family unity, or when it is otherwise in the public interest.

*Id.* (emphasis added). The parties agree that this statute requires an alien to be "admissible" before he can be granted adjustment of status. Saintha concedes that his felony convictions render him inadmissible. Thus, his request for adjustment of status under § 1159(a) is accompanied, as it must be, by a request for waiver of inadmissibility under § 1159(c).

The parties disagree, however, as to the proper interplay of subsections (a)(1) and (a)(2). The government suggests that subsection (a)(1) provides three criteria that must be satisfied by any alien seeking adjustment of status, regardless of whether a Department of Homeland Security ("DHS") officer determines the alien's compliance with such criteria (as suggested in subsection (a)(1)) or an IJ makes the determination (as suggested in subsection (a)(2)). Put differently, the government views subsection (a)(2) to simply acknowledge that, for aliens in removal proceedings, the determinations usually made by DHS officials are instead consolidated before the IJ so that the alien's legal status can be adjudicated holistically. *See Perez-Vargas v. Gonzales*, 478 F.3d 191, 194 (4th Cir. 2007) (recognizing that, once an alien is in removal proceedings, the presiding IJ has jurisdiction to decide questions of adjustment of status, which determination would otherwise be made by DHS officials). Because Saintha does not satisfy the third criterion of § 1159(a)(1)—i.e., that the alien "has not acquired permanent resident status,"—the government concludes that he cannot be eligible for adjustment of status, whether before a DHS official or an IJ.

Saintha argues, on the contrary, that subsection (a)(1) is directed only to newly admitted refugees, while subsection (a)(2) applies both to newly admitted refugees and to those who are seeking an adjustment in immigration proceedings. That is, he reads subsection (a)(2)

to provide a stand-alone path to achieving LPR status: "Any alien who is found . . . after a hearing before an immigration judge to be admissible . . . shall . . . be regarded as lawfully admitted to the United States for permanent residence," § 1159(a)(2). As nothing in subsection (a)(2) imposes a limit on the number of times an alien originally admitted as a refugee may pursue adjustment of status, nor otherwise harkens back to the three criteria of subsection (a)(1), Saintha claims that he is eligible for such relief. This interpretation is more logical, he argues, because it renders both refugees convicted of crimes before adjusting to LPR status and those that commit crimes after such an adjustment eligible to seek discretionary relief through a waiver of inadmissibility and adjustment to LPR status.

Though we find the government's reading of the statute the more persuasive of the two, we need not resolve the question de novo. Instead, assuming without deciding that the statute could be read either way, we find the BIA's interpretation to be "based on a permissible construction of the statute" and therefore controlling. *See Chevron*, 467 U.S. at 843.

The BIA read subsection (a)(1) to provide three criteria that must be met by any alien seeking adjustment of status. Because Saintha concedes that he "has [already] acquired permanent resident status" once in the past, the BIA ruled, that he cannot satisfy the third criterion and therefore cannot achieve adjustment of status a second time. The BIA found that Saintha is likewise ineligible to seek a waiver of inadmissibility under § 1159(c) because such a waiver is only available to aliens seeking adjustment of status and would be futile outside of that context.

The BIA's interpretation certainly qualifies as a permissible construction of the statute. Section 1159(a)(1) sets out the "criteria and procedures" for an alien, admitted as a refugee, to adjust his status to that of a LPR. Among this list of criteria is § 1159(a)(1)(c), which limits the relief to aliens "who ha[ve] not acquired permanent resident status." Thus, it is logical to conclude that an alien such as Saintha, who has previously acquired permanent resident status but was later rendered removable by the commission of multiple crimes, is ineligible to acquire LPR status again under § 1159. *See Gutnik v. Gonzales*, 469 F.3d 683, 690 (7th Cir. 2006) (deferring to the BIA in adopting

a similar interpretation of § 1159). Further, this interpretation is in accord with the Attorney General's stated policy of granting "favorable adjustments of status to violent or dangerous individuals [only] in extraordinary circumstances." *See In re Jean*, 23 I&N Dec. 373, 383 (2002). The BIA was charged with construing § 1159 in its entirety and applying it to Saintha's request for relief. In doing so, it determined that § 1159(a)(1)(c) prohibited him from seeking adjustment of status and, likewise, a waiver of inadmissibility. The possibility that a subsection of that statute could perhaps lead another decisionmaker to a different conclusion only reinforces the ambiguity of the statute. It does not, however, render the BIA's interpretation impermissible so as to overcome the substantial deference the BIA is owed. In light of that deference, we deny Saintha's petition for review as to his requests for adjustment of status and a waiver of inadmissibility.

## IV.

For the foregoing reasons, the petition for review is

*DISMISSED IN PART AND DENIED IN PART*.