**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JORGE FILADELFO ROBLETO-PASTORA,
*Petitioner,*

v.

ERIC H. HOLDER JR., Attorney
General,
*Respondent.*

No. 07-71492

Agency No.
A027-447-476

JORGE FILADELFO ROBLETO-PASTORA,
*Petitioner,*

v.

ERIC H. HOLDER JR., Attorney
General,
*Respondent.*

No. 07-72091

Agency No.
A027-447-476

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
December 10, 2008—Seattle, Washington

Filed May 27, 2009

Before: Robert R. Beezer, Ronald M. Gould and
Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Callahan

6229

## COUNSEL

Philip James Smith, Nelson Smith, LLP, Portland, Oregon, for the petitioner.

Gregory G. Katas, Richard M. Evans, and Paul Fiorino, United States Department of Justice, Washington, D.C., for the respondent.

## OPINION

CALLAHAN, Circuit Judge:

Jorge Filadelfo Robleto-Pastora ("Robleto" or "petitioner"), born June 5, 1960, is a native and citizen of Nicaragua who entered the United States in 1984, was granted asylum, then adjusted status to that of lawful permanent resident (sometimes referred to herein as "LPR") in 1988. Following his 2005 forgery conviction in Oregon state court, petitioner was ordered removed as an aggravated felon pursuant to sections 237(a)(2)(A)(iii) and 101(a)(43)(R) of the Immigration and Nationality Act ("INA"). 8 U.S.C. §§ 1227(a)(2)(A)(iii), 1101(a)(43)(R). He petitions for review of the removal order, and the denial of his motion to reconsider that order. We deny both petitions.

### I.

### A.   Factual Background

Robleto and several of his family members left Nicaragua in the mid-1980s when the Sandinistas rose to power. In 1986, he and other family members were granted asylum pursuant to section 208 of the INA. *See* 8 U.S.C. § 1158. On October 2, 1988, he adjusted his status to lawful permanent resident pursuant to section 209(b). 8 U.S.C. § 1159(b).

In October 2004, Robleto was arrested and charged in Oregon state court with forgery-related offenses involving the distribution of false identifications. On July 29, 2005, he pled no contest to six counts of first degree forgery, and was sentenced to thirteen months in prison. He was released from prison after eleven months, and then charged with removability under section 237(a)(2)(A)(iii) of the INA. *See* 8 U.S.C. § 1227(a)(2)(A)(iii).

During the removal proceedings, Robleto sought relief from removal by (1) submitting a new application for asylum, (2) applying for withholding of removal under section 241(b)(3) of the INA and the Convention Against Torture ("CAT"), and (3) seeking to adjust his status under section 209(b) of the INA in connection with a waiver of inadmissibility under section 209(c). 8 U.S.C. § 1159(b)-(c).

On August 23, 2006, an Immigration Judge ("IJ") ruled that Robleto was ineligible to apply for adjustment of status under section 209(b) because that section was available only to asylees, and not lawful permanent residents such as Robleto.

Following several continuances, Robleto appeared before an IJ on December 5, 2006. He testified that his father and brother were employees in the Somoza government, and that he worked as a mechanic in the government's "General Customs" division. All three of them lost their jobs when the Sandinistas took control of the government. Robleto testified that he was unable to find gainful employment after he was fired, but admitted that he did not look for work in the private sector.

Other than losing his job, Robleto did not allege that he suffered actual persecution by the Sandinistas. Robleto's mother testified generally that the Sandinistas harassed the entire family due to their association with the Somoza government, but she failed to identify any specific persecution suffered by Robleto. Robleto's brother, Sergio, however, was detained by

the Sandinistas for several hours in 1981 based on suspicions that he was involved with a school bombing. Another brother, Alvaro, was also detained by the Sandinistas in 1982, and was beaten and tortured. Robleto further testified that he is related to Eden Pastora, a famous anti-Sandinista leader.

Noting the 2006 reelection of Sandinista leader, Daniel Ortega, Robleto testified that he feared returning to Nicaragua. He alleged that the government would think he was an American spy, but cited no basis for this fear. He also failed to produce evidence that the current democratically-elected administration was persecuting former Somoza-government employees or members of Robleto's family. In fact, he testified that several aunts and uncles from both sides of his family, and at least one grandparent, still live in Nicaragua, and his mother testified that she and her husband had gone back to visit since leaving in the 1980s.

Citing, among other things, Robleto's aggravated felony, the IJ denied Robleto's application for asylum.[1] The IJ also denied his application for withholding based on his failure to establish past persecution or a well-founded fear of persecution, and ordered him removed to Nicaragua.

## B. BIA Decision

On March 27, 2007, the BIA dismissed Robleto's appeal from the IJ's decision finding him removable as charged and denying his applications for relief. The BIA held that the IJ properly pretermitted Robleto's new asylum application based on his aggravated felony conviction, and concluded that Robleto failed to establish that he was entitled to withholding

---

[1]The IJ concluded that Robleto had obtained asylum derivatively through his father. While it is unclear from the record whether his grant of asylum was primary or derivative, it was nonetheless his burden to establish past persecution or a well-founded fear of future persecution. *See Unuakhaulu v. Gonzales*, 416 F.3d 931, 937-39 (9th Cir. 2005).

of removal. The BIA rejected Robleto's contentions that he retained the status of an asylee, and that such status entitled him to a presumption of a well-founded fear of persecution. Noting that his original asylum application contained no allegation of past persecution, the BIA held that a prior grant of asylum was insufficient to establish the presumption. The BIA noted that Robleto presented no evidence that he would be of any interest to the current administration, or that it otherwise persecuted former Somoza-government employees or relatives of former government employees. Accordingly, the BIA concluded that Robleto failed to establish a likelihood of future persecution in Nicaragua.

The BIA also concluded that Robleto's status was that of a lawful permanent resident, not an asylee, and that he retained that status until a final order of removal. Thus, it concluded that Robleto's request to apply for adjustment of status under section 209(b) in connection with a waiver of inadmissibility under section 209(c) "made no sense." Finally, the BIA concluded that Robleto's due process rights were not violated when the IJ denied his request for a continuance to obtain his immigration records because he failed to establish prejudice resulting from the denial.

On April 20, 2007, Robleto filed a motion for reconsideration with respect to the BIA's determination that he was ineligible to apply for adjustment of status under section 209(b). On May 3, 2007, the BIA denied Robleto's motion to reconsider. Robleto filed timely petitions for review of that order and the March 27, 2007, order dismissing his appeal.[2]

---

[2]Petitioner presents no independent grounds challenging the order denying his motion to reconsider. Accordingly, we deny his petition for review of that order for the reasons set forth herein.

## II.

### A.   Jurisdiction and Standards of Review

We have jurisdiction under 8 U.S.C. § 1252(a)(2)(D) to review final orders of removal involving "constitutional claims or questions of law," such as the ones presented in Robleto's petitions. *See Morales-Alegria v. Gonzales,* 449 F.3d 1051, 1053 (9th Cir. 2006). Where the BIA conducts its own review of the evidence and law, "our review is limited to the BIA's decision, except to the extent the IJ's opinion is expressly adopted." *Hosseini v. Gonzales*, 471 F.3d 953, 957 (9th Cir. 2006) (citation and internal quotation marks omitted).

We review the BIA's determination of purely legal questions de novo. *Simeonov v. Ashcroft*, 371 F.3d 532, 535 (9th Cir. 2004). We may reverse the BIA's determination that an applicant is ineligible for asylum or withholding of removal "only if the evidence presented by [the applicant] is such that a reasonable fact-finder would be compelled to conclude that the requisite fear of persecution existed." *Khourassany v. INS*, 208 F.3d 1096, 1100 (9th Cir. 2000); *see also INS v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992) (noting that "[t]o reverse the BIA finding we must find that the evidence not only *supports* that conclusion, but *compels* it") (emphasis in original).

### B.   Application for Asylum and Withholding of Removal

We begin with the most straightforward of petitioner's claims for relief: his applications for asylum and withholding of removal under the INA and the CAT. "An application for asylum under 8 U.S.C. § 1158 is generally considered an application for withholding of removal under 8 U.S.C. § 1231(b)(3)." *Zehatye v. Gonzales*, 453 F.3d 1182, 1190 (9th Cir. 2006) (citing 8 C.F.R. § 1208.3(b)). For asylum applications filed after April 1, 1997, an applicant is also considered

for eligibility for withholding of removal under the CAT. *See* 8 C.F.R. § 208.13(c)(1).

**[1]** "An alien is eligible for asylum relief if she can prove that she is a refugee, which she can establish by proving either actual past persecution or a well-founded fear of future persecution" on account of race, religion, nationality, membership in a particular social group, or political opinion. *Lolong v. Gonzales*, 484 F.3d 1173, 1178 (9th Cir. 2007); 8 U.S.C. § 1101(a)(42)(A). The agent(s) of persecution must be "the government or . . . persons or organizations which the government is unable or unwilling to control." *Reyes-Reyes v. Ashcroft*, 384 F.3d 782, 788 (9th Cir. 2004) (internal quotation marks omitted). "Once an applicant demonstrates past persecution, there is a presumption of a well-founded fear of future persecution." *Cordon-Garcia v. INS*, 204 F.3d 985, 990 (9th Cir. 2000).

**[2]** Robleto argues that he is eligible for asylum and withholding based on his previous grant of asylum, which he asserts entitles him to a presumption of a well-founded fear of future persecution. However, even assuming that Robleto's previous grant of asylum was based on actual past persecution, the BIA correctly determined that he is currently ineligible for asylum due to his aggravated felony conviction.[3] *Rendon v. Mukasey*, 520 F.3d 967, 973 (9th Cir. 2008) (recognizing that an alien convicted of an aggravated felony is ineligible for asylum) (citing U.S.C. §§ 1158(b)(2)(A)(ii), (b)(2)(B)(I)); *see also* 8 C.F.R. § 1208.13(c)(1) (providing that for applications filed after April 1, 1997, an applicant *"shall not qualify* for asylum" if he has been convicted of an aggravated felony) (emphasis added).

**[3]** While Robleto's conviction precludes his current asylum application, it does not preclude his application for withholding of removal under section 241(b)(3) of the INA. 8

---

[3]Robleto does not contest that his conviction is an aggravated felony.

U.S.C. § 1231(b)(3).**⁴** " 'To qualify for withholding of removal, an alien must demonstrate that it is more likely than not that he would be subject to persecution on one of the specified grounds.' " *Zehatye*, 453 F.3d at 1190 (quoting *Al-Harbi v. INS*, 242 F.3d 882, 888 (9th Cir. 2001)). The "standard for withholding of removal is more stringent than the well-founded fear standard governing asylum," and "requires objective evidence that it is more likely than not that the alien will be subject to persecution upon deportation." *Id.* (citations and quotation marks omitted). While a showing of past persecution entitles an alien to a presumption of eligibility for withholding of removal, it is the alien's burden to establish such persecution. *Fedunyak v. Gonzales*, 477 F.3d 1126, 1130 (9th Cir. 2007); *Unuakhaulu*, 416 F.3d at 938-39.

The BIA determined that Robleto's prior grant of asylum was insufficient to establish a presumption of a well-founded fear of future persecution based on past persecution. We agree.

**[4]** Here, neither the record nor Robleto's own testimony establishes past persecution. While Robleto's original asylum application identifies incidents from the early 1980s involving his brothers, Sergio and Alvaro, it contains no allegation that Robleto himself was persecuted. *See Prasad v. INS*, 47 F.3d 336, 340 (9th Cir. 1995) (concluding that "attacks on family members do not necessarily establish a well-founded fear of persecution absent a pattern of persecution tied to the petition-

---

**⁴**Robleto's aggravated felony does not bar him from applying for withholding of removal under 8 U.S.C. § 1231(b)(3). Subsection (b)(3)(B)(ii) provides that an alien convicted of a "particularly serious crime" is ineligible for withholding of removal. The statute authorizes the Attorney General to designate a crime "particularly serious" and provides that any aggravated felony resulting in a sentence of five years or more "shall be considered . . . a particularly serious crime." 8 U.S.C. § 1231(b)(3)(B). Here, Robleto's conviction did not result in a sentence of five or more years, and the Attorney General has not otherwise determined that his crime is "particularly serious."

er[ ]"). Moreover, Robleto acknowledged during the immigration proceedings that, other than losing his job, he was not personally targeted by the Sandinistas. Even in his 2006 application for asylum and withholding of removal, Robleto identified no instances of persecution involving himself. Based on Robleto's failure to establish that his prior grant of asylum was based on past persecution, we conclude that the BIA correctly determined that he was not entitled to a presumption of a well-founded fear of persecution.

Furthermore, we find that the record supports the BIA's determination that Robleto failed to show a likelihood of future persecution in Nicaragua. Robleto presented no evidence indicating that the current administration persecutes former employees of the Somoza government or family members of those who opposed the Sandinistas more than twenty years ago. Moreover, Robleto failed to present a plausible basis for his alleged fear of returning to Nicaragua. Rather, he testified that he thought that the current Nicaraguan administration would think he was an American spy because he had unsuccessfully tried to enlist in the United States Army in the early 1990s. He did not indicate how the administration would know this fact, or why it would lead the government to believe he was a spy, or even that the government actually persecutes American "spies." Finally, he offered no evidence that any family member or former government employee is persecuted by the current Nicaraguan administration, and indicated that several of his aunts and uncles from both sides of his family, and at least one grandparent, still live in Nicaragua.

**[5]** Based on this record, we are not compelled to reach a conclusion contrary to the BIA's. *See Khourassany*, 208 F.3d at 1100. Neither can we conclude that petitioner is entitled to relief under the CAT, as there was no evidence regarding a likelihood that Robleto would be tortured upon his return. *See Hamoui v. Ashcroft*, 389 F.3d 821, 826-27 (9th Cir. 2004) (noting that to be eligible for withholding under the CAT, the

applicant must establish that he is "more likely than not" to be tortured upon removal). Based on the foregoing, we conclude that the BIA's determination is supported by the record, and that Robleto is not entitled to withholding from removal under the INA or the CAT.

## C.   Asylum Status and Adjustment under Section 209(b) and (c)

We turn now to petitioner's other claims, which are interconnected and somewhat circular in nature. Robleto's thesis is that even though his status was adjusted to lawful permanent resident in 1988, he simultaneously retains his status as an asylee. He argues that under the relevant statutory and regulatory scheme, asylum status remains intact unless it is formally terminated. Further, Robleto argues that by virtue of his continued status as an asylee, he is eligible to "re-adjust" his status to lawful permanent resident under section 209(b) in connection with a waiver of inadmissibility under 209(c), and thereby avoid removal. We reject his arguments.

### 1.   *Termination of Asylum Status*

Robleto alleges that the BIA erred by ordering him removed without first formally terminating his asylum status. He asserts that he retained his asylum status despite his acquisition of LPR status because adjustment of status is not an articulated basis for terminating asylum. *See* 8 U.S.C. § 1158(c)(2).[5] Petitioner is correct that acquisition of LPR sta-

---

[5] Subsection (c)(2) specifically provides that an alien's asylum status may be terminated if:

(A)   the alien no longer meets the conditions described in subsection (b)(1) [pertaining to eligibility for asylum] owing to a fundamental change in circumstances;

(B)   the alien meets a condition described in subsection (b)(2) [setting forth grounds that make an alien ineligible for asylum];

tus is not an enumerated basis for terminating asylum status. However, that does not answer the question of whether respondent could order him removed without first formally terminating his asylum status. Because we conclude that Robleto was a lawful permanent resident and not an asylee at the time of his removal, we conclude that the INA's asylum termination provisions did not apply to him, and accordingly, that no formal termination was required.

**[6]** Section 208(c)(1) of the INA provides, in relevant part, that, "[i]n the case of an alien granted asylum under subsection (b) of this section, the Attorney General — (A) *shall not remove or return the alien to the alien's country* of nationality." 8 U.S.C. § 1158(c)(1)(A) (emphasis added).

**[7]** This prohibition against removal of an asylee is qualified by section 208(c)(2), which provides that "[a]sylum granted under subsection (b) . . . does not convey a right to remain permanently in the United States . . . ." 8 U.S.C. § 1158(c)(2). Subsection (c)(2) further provides that asylum "may be terminated if the Attorney General determines that," among other things, the alien no longer meets the conditions of subsection (b)(1) [i.e., no longer meets the defi-

---

(C) the alien may be removed, pursuant to a bilateral or multi-lateral agreement, to a country (other than the country of the alien's nationality or, in the case of an alien having no nationality, the country of the alien's last habitual residence) in which the alien's life or freedom would not be threatened on account of race, religion, nationality, membership in a particular social group, or political opinion, and where the alien is eligible to receive asylum or equivalent temporary protection;

(D) the alien has voluntarily availed himself or herself of the protection of the alien's country of nationality . . . ; or

(E) the alien has acquired a new nationality and enjoys the protection of the country of his or her new nationality.

8 U.S.C. § 1158(c)(2).

nition of a refugee],[6] has voluntarily availed himself of the protection of his native country, has acquired a new nationality, or meets a condition set forth in subsection (b)(2), which sets forth bars to asylum eligibility. *See* 8 U.S.C. § 1158(b)(2), (c)(2).

**[8]** Section 208(c)(3) of the INA, entitled "Removal when asylum is terminated," provides that an alien "described in paragraph [(c)](2) is subject to any applicable grounds of inadmissibility or deportability under section [*sic*] 1182(a) and 1227(a) of this title, and the alien's removal or return shall be directed by the Attorney General in accordance with sections 1229a and 1231 of this title." 8 U.S.C. § 1158(c)(3) (footnote omitted).

**[9]** Despite its title, subsection (c)(3) does not explicitly require that an asylee's status be terminated prior to removal. Rather, it simply provides that an alien "described in paragraph (2)" — that is, an alien who is *eligible* for termination — is subject to removal on the same grounds as any other alien. The attendant regulations provide more detail regarding the context and bases for terminating asylum status prior to removal. *See, e.g.,* 8 C.F.R. §§ 208.22, 208.24, 1208.22, 1208.24 (allowing asylum officers to terminate asylum status if they determine, after an interview, that qualifying grounds exist).[7] While these regulations seem to require formal termi-

---

[6]Subsection (b)(1)(A) provides, in relevant part:

> The Secretary of Homeland Security or the Attorney General may grant asylum to an alien who has applied for asylum . . . if the Secretary of Homeland Security or the Attorney General determines that such *alien is a refugee within the meaning of section 1101(a)(42)(A) of this title.*

8 U.S.C. § 1158(b)(1)(A) (emphasis added).

[7]8 C.F.R. § 1208.22 provides, in relevant part, that "[a]n alien who has been granted asylum may not be deported or removed unless his or her asylum status is terminated pursuant to § 1208.24." Section 1208.24(a) provides, in relevant part:

nation according to specifically enumerated grounds, they appear only to address termination of asylum for asylees who have not yet adjusted status to that of lawful permanent resident. Thus, we need not consider whether, even for such individuals, these regulations are exhaustive.[8]

Petitioner suggests that because the statute and attendant regulations do not list acquisition of LPR status as a basis for

[A]n asylum officer may terminate a grant of asylum made under the jurisdiction of an asylum officer or a district director if following an interview, the asylum officer determines that:

(1) There is a showing of fraud in the alien's application such that he or she was not eligible for asylum at the time it was granted;

(2) As to applications filed on or after April 1, 1997, one or more of the conditions described in section 208(c)(2) of the Act exist; or

(3) As to applications filed before April 1, 1997, the alien no longer has a well-founded fear of persecution upon return . . . or the alien has committed any act that would have been grounds for denial of asylum under § 1208.13(c)(2).

[8]Although we conclude that these regulations do not apply to petitioner, his reliance on them presents other problems, namely, their apparent conflict with the INA's general removal provision. While the plain language of 8 C.F.R. § 1208.22 constrains termination of asylum status to the grounds enumerated in 8 C.F.R. § 1208.24, those grounds do not encompass all the grounds for removability set forth in section 237(a), the INA's general removal provision. *See* 8 U.S.C. § 1227(a). For example, although an alien is removable under section 237(a) for committing two crimes of moral turpitude, illegal voting, or spousal abuse, these are not grounds for termination under 8 C.F.R. § 1208.24. Thus, an asylee convicted of two crimes of moral turpitude, for example, would not be removable under section 1208.22. This anomalous result is inconsistent with the principle articulated in section 208(c)(2) of the INA, namely, that a grant of asylum does not convey a right to remain permanently in the country, as well as with the INA's general removal provision, which states that "*[a]ny alien*" may be removed. *See Kaganovich v. Gonzales*, 470 F.3d 894, 897 (9th Cir. 2006) (quoting 8 U.S.C. § 1227(a)) (emphasis in original).

termination of asylum, he must, therefore, retain that status simultaneously with his LPR status. However, petitioner's reliance on the silence of the statute and regulations cannot overcome the logic of the statutory scheme, which treats asylees and lawful permanent residents differently, or the BIA's interpretation of the statute as applying only to asylees who have not yet adjusted status.

Each status has legally distinctive features. *Compare*, *e.g.*, 8 U.S.C. § 1101(a)(20) ("The term 'lawfully admitted for permanent residence' means the status of having been lawfully accorded the privilege of residing permanently in the United States.") *with* 8 U.S.C. § 1158(c)(2) ("Asylum . . . does not convey a right to remain permanently in the United States . . . ."). Moreover, asylum status may be terminated simply by virtue of the fact that an alien no longer qualifies as a refugee. *See* 8 U.S.C. § 1158(c)(2)(A); 8 C.F.R. § 1208.24(a)(3) (providing that for asylum applications filed before April 1, 1997, an asylee's status may be terminated if the alien "no longer has a well-founded fear of persecution"). Not so with lawful permanent resident status, a fact which presents a significant incentive for an alien to adjust his status to that of lawful permanent resident.[9] Here, petitioner availed himself of that incentive and acquired LPR status. He retained that status until a final order of removal was entered. *See* 8 C.F.R. § 1001.1(p).[10]

---

[9]We note that the REAL ID Act of 2005 amended section 209(b) so that the Secretary of Homeland Security is no longer limited by the number of adjustments to LPR status she may grant to asylees each fiscal year. *See* REAL ID Act of 2005, Pub. L. No. 109-13, § 101(g)(1)(B)(I), 119 Stat. 231, 305 (2005) (amending 8 U.S.C. § 1159(b) (1990)).

[10]8 C.F.R. § 1001.1(p) provides:

The term lawfully admitted for permanent residence means the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed. Such status terminates upon entry of a final administrative order of exclusion, deportation, removal, or rescission.

**[10]** Based on the foregoing, we conclude that petitioner, having chosen to become a lawful permanent resident with its attendant benefits, was no longer an asylee at the time of his removal proceedings, and was therefore not covered by the statutory and regulatory provisions concerning formal termination of asylum status.

2.   *"Re-adjustment" and Waiver under Section 209*

Having determined that petitioner's status during the removal proceedings was that of a lawful permanent resident and not an asylee, we next consider his contention that he is entitled to seek relief from removal by "re-adjusting" his status to lawful permanent resident. We conclude that he is not.

Petitioner seeks to avoid removal by applying to "re-adjust" status under section 209(b).[11] That section, however, requires that the asylee be admissible. 8 U.S.C. § 1159(b)(5). Petitioner concedes inadmissibility based on his aggravated felony conviction, and seeks to overcome this barrier to adjustment by seeking a waiver of inadmissibility pursuant to section 209(c). That section provides the Secretary or the Attorney General with discretion to waive inadmissibility "for

---

[11]Section 209(b) provides in relevant part: xxA

The Secretary of Homeland Security or the Attorney General . . . may adjust to the status of an alien lawfully admitted for permanent residence the status of any alien granted asylum who—

(1)   applies for such adjustment,

(2)   has been physically present in the United States for at least one year after being granted asylum,

(3)   continues to be a refugee within the meaning of section 1101(a)(42)(A) of this title or a spouse or child of such a refugee,

(4)   is not firmly resettled in any foreign country, and

(5)   is admissible . . . .

8 U.S.C. § 1159(b).

humanitarian purposes, to assure family unity, or when it is otherwise in the public interest." 8 U.S.C. § 1159(c).

The BIA rejected petitioner's claim for relief under section 209, reasoning that it made "no sense" in light of 8 U.S.C. § 1001.1(p), which provides that LPR status remains intact until issuance of a final order of removal. The BIA determined that petitioner retained his LPR status, not asylee status, and as such, could not avail himself of section 209(b) and (c).

**[11]** Not surprisingly, we can find no case squarely addressing the issue of whether an alien who has adjusted status from asylee to LPR may seek relief from removal under section 209. The statute provides for an asylee's adjustment of status to lawful permanent resident, a process petitioner completed in 1988. Accordingly, section 209(b) would appear to be inapplicable. Further, the waiver of inadmissibility in section 209(c) appears to be designed for consideration of inadmissibility when the issue is first considered, i.e., soon after the alien's entry into the United States. Thus, we agree with the BIA that the petitioner's invocation of section 209 "makes no sense" because it does not apply to lawful permanent residents seeking relief from removal.

We find support for our perspective in cases from our sister circuits, which have held that *refugees* who adjust status to lawful permanent resident are ineligible for relief from removal under section 209(a) in connection with a waiver of inadmissibility under section 209(c). *Gutnik v. Gonzales*, 469 F.3d 683, 692 (7th Cir. 2006) (holding that an alien who adjusted status from refugee to LPR was no longer eligible to apply for a waiver of inadmissibility in connection with an adjustment of status under section 209); *Kholyavskiy v. Mukasey*, 540 F.3d 555, 569 n.16 (7th Cir. 2008) ("We have held that, when an individual adjusts his status to that of lawful permanent resident, he still may meet the *definition* of a refugee under 8 U.S.C. § 1101(a)(42); however, he no longer

retains his refugee *status* under 8 U.S.C. § 1157."); *Saintha v. Mukasey*, 516 F.3d 243, 252-53 (4th Cir. 2008) (applying Chevron deference to the BIA's determination that a refugee who had already acquired LPR status was precluded from subsequently re-adjusting to LPR status).

While these cases involve section 209(a), which concerns adjustment of status from *refugee* to LPR, they are nonetheless instructive. In *Gutnik*, the Seventh Circuit deferred to the BIA's determination that relief under section 209 was unavailable to a removable refugee who had previously adjusted his status to that of LPR. *Gutnik*, 469 F.3d at 692. The BIA adopted the IJ's reasoning that Gutnik was ineligible to apply for the waiver of inadmissibility under 8 U.S.C. § 1159(c) because his prior adjustment of status to LPR terminated his refugee status. *Id.* at 685, 689. The BIA also noted that allowing Gutnik to apply for a waiver under section 209(c) would place "him at an unfair advantage over other aliens and would improperly insulate him from his criminal misconduct which occurred many years after his arrival as a refugee." *Id.* at 689. The BIA's reasoning appears to reflect a concern that non-refugee aliens who had previously adjusted status and were facing removal would not have similar opportunities to "readjust" under section 209.[12]

This reasoning echoes the concern we voiced in *Kaganovich* in deciding that refugee status should not be used to insulate aliens from the otherwise applicable removal statute. *See Kaganovich*, 470 F.3d at 898 (finding persuasive the BIA's holding in *In re Smriko*, 23 I. & N. Dec. 836 (BIA 2005) that 8 U.S.C. § 1157(c)(4) should not be read to shield refugees from the INA's general removal provision).

Similarly, in *Saintha*, the Fourth Circuit deferred to the

---

[12] Although section 245(a) of the INA allows an alien to apply for adjustment of status, that section, unlike section 209, requires the alien to have a nonimmigrant visa immediately available. *See* 8 U.S.C. § 1255(a).

BIA's interpretation of section 209(a)(1) as precluding relief from removal for a refugee who had previously acquired LPR status.[13] *Saintha*, 516 F.3d at 247, 253. The BIA rejected Saintha's application to adjust status a second time under section 209(a) in connection with a waiver of inadmissibility under section 209(c), concluding that the plain language of section 209(a)(1) precluded "a refugee who has already acquired LPR status . . . from subsequently re-adjusting to LPR status." *Id.* at 247. Specifically, the BIA read section 209(a)(1) as providing three criteria for adjusting status, one of which requires the alien not to have already "acquired permanent resident status." *Id.* at 253. Because Saintha had already acquired LPR status, he could not satisfy this criterion, and therefore was ineligible to adjust status a second time. *Id.* The Fourth Circuit agreed with the BIA's interpretation, noting that it was "logical to conclude that an alien . . . who has previously acquired permanent resident status but was later rendered removable by the commission of multiple crimes, is ineligible to acquire LPR status again under § 1159." *Id.*

---

[13]Section 209(a)(1) provides in relevant part:

a) Criteria and procedures applicable for admission as immigrant; effect of adjustment.

(1) Any alien who has been admitted to the United States under section 1157 of this title —

(A) whose admission has not been terminated by the Secretary of Homeland Security or the Attorney General pursuant to such regulations as the Secretary of Homeland Security or the Attorney General may prescribe,

(B) who has been physically present in the United States for at least one year, and

(C) *who has not acquired permanent resident status*,

shall, at the end of such year period, return or be returned to the custody of the Department of Homeland Security for inspection and examination for admission to the United States as an immigrant in accordance with the provisions of sections 1225, 1229a, and 1231 of this title.

8 U.S.C. § 1159(a)(1) (emphasis added).

We find the Fourth and Seventh Circuits' interpretation of section 209(a) to be persuasive. It is consistent with our conclusion that petitioner was a lawful permanent resident and not an asylee during the removal proceedings, and we see no reason why we should read 209(b) in a contrary manner with respect to asylees who have acquired lawful permanent resident status.[14] Although section 209(a) explicitly provides that adjustment under that section is unavailable to refugees who have already "acquired permanent resident status," *see* 8 U.S.C. § 1159(a)(1)(C), and section 209(b) contains no such provision, the language of section 209(b) is nonetheless clear.

It provides the Secretary of Homeland Security or the Attorney General with discretion to "adjust to the status of an alien lawfully admitted for permanent residence the status of any alien granted asylum . . . ." 8 U.S.C. § 1159(b). It does not provide for "re-adjustment" of status for asylees who have already acquired LPR status, and we decline to expand the statute's coverage to such individuals. To do so would provide unique relief to asylees who have acquired LPR status, while precluding such relief for similarly situated refugees, many of whom, unlike petitioner, will not have been convicted of an aggravated felony.

---

[14]Petitioner cites several BIA cases in which a lawful permanent resident was permitted to seek relief from removal by "re-adjusting" status to that of LPR pursuant to section 245(a) of the INA in connection with section 212's various waiver provisions. Those cases are inapposite as they concern distinct statutes whose requirements the aliens met. *See In re Mendez-Moralez*, 21 I. & N. Dec. 296 (BIA 1996); *Matter of Gabryelsky*, 20 I. & N. Dec. 750 (BIA 1993). More precisely, section 245(a) applies to any alien "who was inspected and admitted or paroled into the United States" and who has a nonimmigrant visa immediately available. 8 U.S.C. § 1255(a). By contrast, section 209(b) is much narrower, and only provides for an *asylee's* adjustment of status to LPR. As set forth above, petitioner is no longer an asylee. Petitioner's reliance on *In re K-A-*, 23 I. & N. Dec. 661 (BIA 2004) is also inapposite. In that case, although the BIA determined that an asylee could apply for relief from removal under section 209(b) and (c), that asylee had not previously acquired LPR status.

Significantly, the legislative history of the INA's asylum provisions supports our reluctance to treat refugees and asylees disparately, as it indicates that the two classes of aliens were to have essentially "equivalent status" under the law. The INA's asylum provisions were enacted into law pursuant to the Refugee Act of 1980. The Refugee Act, in addition to "regulariz[ing] the procedures governing the admission of refugees into the United States," *INS v. Stevic*, 467 U.S. 407, 425 (1984), required the Attorney General to establish procedures for "determining asylum claims filed by aliens who are physically present in the United States." Refugee Act of 1980, S. Rep. No 96-256, at 9 (1980), *reprinted in* 1980 U.S.C.C.A.N. 141, 149. The legislative history shows that Congress saw asylees and refugees as having similar status under the law, indicating that those granted asylum were to be "placed into *a conditional admission status equivalent in most respects to that provided under current law to refugees.*" *Id.* (emphasis added).

Nothing in the legislative history indicates that asylum status was so distinct that it conferred an exemption from statutes governing the conduct of other aliens admitted to the United States, or otherwise provided additional relief from removal that was unavailable to refugees. *See Kaganovich*, 470 F.3d at 898 (agreeing with BIA's determination that INA's refugee provisions could not be read to immunize refugees from the INA's removal provision). Consistent with this history, we decline to read section 209(b) as providing asylees who have acquired LPR status with additional avenues for avoiding removal that are otherwise foreclosed to similarly situated refugees.

**[12]** As set forth above, at the time of his request for "readjustment" Robleto was, in fact, an alien lawfully admitted for permanent residence. He retained that status until a final order of removal. *See* 8 C.F.R. § 1001.1(p). Section 209(b), by its terms, contemplates an asylee's adjustment of status to LPR, and does not extend relief to aliens who have already

acquired LPR status. This plain reading of section 209(b) is consistent with decisions of the Seventh and Fourth Circuits holding that relief from removal under 209(a) is unavailable to refugees who have adjusted status. Based on the foregoing, we deny Robleto's petition and hold that an alien who acquired lawful permanent resident status based on a prior grant of asylum may not "re-apply" for LPR status and relief from removal under section 209(b).

## D. Due Process Claim

Finally, petitioner asserts that the IJ denied him due process by denying his request for a continuance to obtain his immigration records.

**[13]** "[A]n alien who faces deportation is entitled to a full and fair hearing of his claims and a reasonable opportunity to present evidence on his behalf." *Colmenar v. INS*, 210 F.3d 967, 971 (9th Cir. 2000); *see also Cano-Merida v. INS*, 311 F.3d 960, 964 (9th Cir. 2002). In order to show a due process violation, an applicant must show prejudice. *Cano-Merida*, 311 F.3d at 965. Prejudice is shown where the violation potentially affected the outcome of the proceedings. *Id.*

**[14]** Petitioner fails to establish prejudice. Although the IJ conducted the removal proceedings in the absence of petitioner's full immigration file, petitioner was able to present his claims for relief without it. Moreover, the BIA had the full record before it when examining petitioner's appeal. As set forth above, nothing in petitioner's file changes the fact that he is currently ineligible for asylum. Moreover, even after examining petitioner's full immigration file, the BIA determined that petitioner failed to establish that his prior grant of asylum was based on actual, past persecution or that he was likely to suffer persecution upon return to Nicaragua. We find that the record supports this view. Accordingly, petitioner has failed to show that a continuance would have affected the outcome of the proceedings.

## III.

**[15]** Based on the foregoing, we conclude that the BIA did not err in denying petitioner's applications for asylum and withholding of removal under the INA and the CAT. Further, we conclude that petitioner retained his status as a lawful permanent resident during the removal proceedings, and therefore was not covered by section 208(c)'s termination provisions and its attendant regulations. We also conclude that, as an alien with lawful permanent resident status, petitioner was not eligible to seek relief from removal under section 209(b) of the INA in connection with a waiver of inadmissibility under section 209(c). Finally, we conclude that the denial of petitioner's request for a continuance does not amount to a due process violation. Accordingly, the petitions for review are **DENIED**.