**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

JORGE FILADELFO ROBLETO-PASTORA,
                        *Petitioner,*

            v.

ERIC H. HOLDER JR., Attorney
General,
                        *Respondent.*

No. 07-71492

Agency No.
A027-447-476

JORGE FILADELFO ROBLETO-PASTORA,
                        *Petitioner,*

            v.

ERIC H. HOLDER JR., Attorney
General,
                        *Respondent.*

No. 07-72091

Agency No.
A027-447-476

ORDER AND
AMENDED
OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
December 10, 2008—Seattle, Washington

Filed May 27, 2009
Amended January 11, 2010

Before: Robert R. Beezer, Ronald M. Gould and
Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Callahan

## COUNSEL

Philip James Smith, Nelson Smith, LLP, Portland, Oregon, for the petitioner.

Gregory G. Katsas, Richard M. Evans, and Paul Fiorino, United States Department of Justice, Washington, D.C., for the respondent.

## ORDER

The opinion filed May 27, 2009, and published at 567 F.3d 437, is hereby amended. The amended opinion is filed concurrently with this order. With the amendments, the panel votes to deny the petition for rehearing. Judge Gould and Judge Callahan vote to deny the petition for rehearing en banc, and Judge Beezer so recommends.

The full court was advised of the suggestion for rehearing en banc and no judge requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35. The petition for rehearing and petition for rehearing en banc are hereby DENIED. The panel will entertain any additional petitions for rehearing or rehearing en banc that are filed in accordance with the applicable rules.

SO ORDERED.

## OPINION

CALLAHAN, Circuit Judge:

Jorge Filadelfo Robleto-Pastora ("Robleto" or "petitioner"), born June 5, 1960, is a native and citizen of Nicaragua who entered the United States in 1984, was granted asylum, then adjusted status to that of lawful permanent resident (sometimes referred to herein as "LPR") in 1988. Following his 2005 forgery conviction in Oregon state court, petitioner was ordered removed as an aggravated felon pursuant to sections 237(a)(2)(A)(iii) and 101(a)(43)(R) of the Immigration and

Nationality Act ("INA"). 8 U.S.C. §§ 1227(a)(2)(A)(iii), 1101(a)(43)(R). He petitions for review of the removal order, and the denial of his motion to reconsider that order. We deny both petitions.

## I.

### A. Factual Background

Robleto and several of his family members left Nicaragua in the mid-1980s when the Sandinistas rose to power. In 1986, he and other family members were granted asylum pursuant to section 208 of the INA. *See* 8 U.S.C. § 1158. On October 2, 1988, he adjusted his status to lawful permanent resident pursuant to section 209(b). 8 U.S.C. § 1159(b).

In October 2004, Robleto was arrested and charged in Oregon state court with forgery-related offenses involving the distribution of false identifications. On July 29, 2005, he pled no contest to six counts of first degree forgery, and was sentenced to thirteen months in prison. He was released from prison after eleven months, and then charged with removability under section 237(a)(2)(A)(iii) of the INA. *See* 8 U.S.C. § 1227(a)(2)(A)(iii).

During the removal proceedings, Robleto sought relief from removal by (1) submitting a new application for asylum, (2) applying for withholding of removal under section 241(b)(3) of the INA and the Convention Against Torture ("CAT"), and (3) seeking to adjust his status under section 209(b) of the INA in connection with a waiver of inadmissibility under section 209(c). 8 U.S.C. § 1159(b)-(c).

On August 23, 2006, an Immigration Judge ("IJ") ruled that Robleto was ineligible to apply for adjustment of status under section 209(b) because that section was available only to asylees, and not lawful permanent residents such as Robleto.

Following several continuances, Robleto appeared before an IJ on December 5, 2006. He testified that his father and brother were employees in the Somoza government, and that he worked as a mechanic in the government's "General Customs" division. All three of them lost their jobs when the Sandinistas took control of the government. Robleto testified that he was unable to find gainful employment after he was fired, but admitted that he did not look for work in the private sector.

Other than losing his job, Robleto did not allege that he suffered actual persecution by the Sandinistas. Robleto's mother testified generally that the Sandinistas harassed the entire family due to their association with the Somoza government, but she failed to identify any specific persecution suffered by Robleto. Robleto's brother, Sergio, however, was detained by the Sandinistas for several hours in 1981 based on suspicions that he was involved with a school bombing. Another brother, Alvaro, was also detained by the Sandinistas in 1982, and was beaten and tortured. Robleto further testified that he is related to Eden Pastora, a famous anti-Sandinista leader.

Noting the 2006 reelection of Sandinista leader, Daniel Ortega, Robleto testified that he feared returning to Nicaragua. He alleged that the government would think he was an American spy, but cited no basis for this fear. He also failed to produce evidence that the current democratically-elected administration was persecuting former Somoza-government employees or members of his family. In fact, he testified that several aunts and uncles from both sides of his family, and at least one grandparent, still live in Nicaragua, and his mother testified that she and her husband had gone back to visit since leaving in the 1980s.

Citing, among other things, Robleto's aggravated felony, the IJ denied Robleto's application for asylum.[1] The IJ also

---

[1]The IJ concluded that Robleto had obtained asylum derivatively through his father. While it is unclear from the record whether his grant

denied his application for withholding based on his failure to establish past persecution or a well-founded fear of persecution, and ordered him removed to Nicaragua.

## B. BIA Decision

On March 27, 2007, the BIA dismissed Robleto's appeal from the IJ's decision finding him removable as charged and denying his applications for relief. The BIA held that the IJ properly pretermitted Robleto's new asylum application based on his aggravated felony conviction, and concluded that Robleto failed to establish that he was entitled to withholding of removal. The BIA rejected Robleto's contentions that he retained the status of an asylee, and that such status entitled him to a presumption of a well-founded fear of persecution. Noting that his original asylum application contained no allegation of past persecution, the BIA held that a prior grant of asylum was insufficient to establish the presumption. The BIA noted that Robleto presented no evidence that he would be of any interest to the current administration, or that it otherwise persecuted former Somoza-government employees or relatives of former government employees. Accordingly, the BIA concluded that Robleto failed to establish a likelihood of future persecution in Nicaragua.

The BIA also concluded that Robleto's status was that of a lawful permanent resident, not an asylee, and that he retained that status until a final order of removal. Thus, it concluded that Robleto's request to apply for adjustment of status under section 209(b) in connection with a waiver of inadmissibility under section 209(c) "made no sense." Finally, the BIA concluded that Robleto's due process rights were not violated when the IJ denied his request for a continuance to

of asylum was primary or derivative, it was nonetheless his burden to establish past persecution or a well-founded fear of future persecution. *See Unuakhaulu v. Gonzales*, 416 F.3d 931, 937-39 (9th Cir. 2005).

obtain his immigration records because he failed to establish prejudice resulting from the denial.

On April 20, 2007, Robleto filed a motion for reconsideration with respect to the BIA's determination that he was ineligible to apply for adjustment of status under section 209(b). On May 3, 2007, the BIA denied Robleto's motion to reconsider. Robleto filed timely petitions for review of that order and the March 27, 2007, order dismissing his appeal.[2]

## II.

### A.   Jurisdiction and Standards of Review

We have jurisdiction under 8 U.S.C. § 1252(a)(2)(D) to review final orders of removal involving "constitutional claims or questions of law," such as the ones presented in Robleto's petitions. *See Morales-Alegria v. Gonzales,* 449 F.3d 1051, 1053 (9th Cir. 2006). Where the BIA conducts its own review of the evidence and law, "our review is limited to the BIA's decision, except to the extent the IJ's opinion is expressly adopted." *Hosseini v. Gonzales*, 471 F.3d 953, 957 (9th Cir. 2006) (citation and internal quotation marks omitted).

We review the BIA's determination of purely legal questions de novo. *Simeonov v. Ashcroft*, 371 F.3d 532, 535 (9th Cir. 2004). We may reverse the BIA's determination that an applicant is ineligible for asylum or withholding of removal "only if the evidence presented by [the applicant] is such that a reasonable fact-finder would be compelled to conclude that the requisite fear of persecution existed." *Khourassany v. INS*, 208 F.3d 1096, 1100 (9th Cir. 2000); *see also INS v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992) (noting that "[t]o

---

[2]Petitioner presents no independent grounds challenging the order denying his motion to reconsider. Accordingly, we deny his petition for review of that order for the reasons set forth herein.

reverse the BIA finding we must find that the evidence not only *supports* that conclusion, but *compels* it") (emphasis in original).

## B.   Application for Asylum and Withholding of Removal

We begin with the most straightforward of petitioner's claims for relief: his applications for asylum and withholding of removal under the INA and the CAT. "An application for asylum under 8 U.S.C. § 1158 is generally considered an application for withholding of removal under 8 U.S.C. § 1231(b)(3)." *Zehatye v. Gonzales*, 453 F.3d 1182, 1190 (9th Cir. 2006) (citing 8 C.F.R. § 1208.3(b)). For asylum applications filed after April 1, 1997, an applicant is also considered for eligibility for withholding of removal under the CAT. *See* 8 C.F.R. § 208.13(c)(1).

[1] "An alien is eligible for asylum relief if she can prove that she is a refugee, which she can establish by proving either actual past persecution or a well-founded fear of future persecution" on account of race, religion, nationality, membership in a particular social group, or political opinion. *Lolong v. Gonzales*, 484 F.3d 1173, 1178 (9th Cir. 2007); 8 U.S.C. § 1101(a)(42)(A). The agent(s) of persecution must be "the government or . . . persons or organizations which the government is unable or unwilling to control." *Reyes-Reyes v. Ashcroft*, 384 F.3d 782, 788 (9th Cir. 2004) (internal quotation marks omitted). "Once an applicant demonstrates past persecution, there is a presumption of a well-founded fear of future persecution." *Cordon-Garcia v. INS*, 204 F.3d 985, 990 (9th Cir. 2000).

[2] Robleto argues that he is eligible for asylum and withholding based on his previous grant of asylum, which he asserts entitles him to a presumption of a well-founded fear of future persecution. However, even assuming that Robleto's previous grant of asylum was based on actual past persecution, the BIA correctly determined that he is currently ineligi-

ble for asylum due to his aggravated felony conviction.[3] *Rendon v. Mukasey*, 520 F.3d 967, 973 (9th Cir. 2008) (recognizing that an alien convicted of an aggravated felony is ineligible for asylum) (citing U.S.C. §§ 1158(b)(2)(A)(ii), (b)(2)(B)(I)); *see also* 8 C.F.R. § 1208.13(c)(1) (providing that for applications filed after April 1, 1997, an applicant *"shall not qualify* for asylum" if he has been convicted of an aggravated felony) (emphasis added).

**[3]** While Robleto's conviction precludes his current asylum application, it does not preclude his application for withholding of removal under section 241(b)(3) of the INA. 8 U.S.C. § 1231(b)(3).[4] " 'To qualify for withholding of removal, an alien must demonstrate that it is more likely than not that he would be subject to persecution on one of the specified grounds.' " *Zehatye*, 453 F.3d at 1190 (quoting *Al-Harbi v. INS*, 242 F.3d 882, 888 (9th Cir. 2001)). The "standard for withholding of removal is more stringent than the well-founded fear standard governing asylum," and "requires objective evidence that it is more likely than not that the alien will be subject to persecution upon deportation." *Id.* (citations and quotation marks omitted). While a showing of past persecution entitles an alien to a presumption of eligibility for withholding of removal, it is the alien's burden to establish such persecution. *Fedunyak v. Gonzales*, 477 F.3d 1126, 1130 (9th Cir. 2007); *Unuakhaulu*, 416 F.3d at 938-39.

---

[3]Robleto does not contest that his conviction is an aggravated felony.

[4]Robleto's aggravated felony does not bar him from applying for withholding of removal under 8 U.S.C. § 1231(b)(3). Subsection (b)(3)(B)(ii) provides that an alien convicted of a "particularly serious crime" is ineligible for withholding of removal. The statute authorizes the Attorney General to designate a crime "particularly serious" and provides that any aggravated felony resulting in a sentence of five years or more "shall be considered . . . a particularly serious crime." 8 U.S.C. § 1231(b)(3)(B). Here, Robleto's conviction did not result in a sentence of five or more years, and the Attorney General has not otherwise determined that his crime is "particularly serious."

The BIA determined that Robleto's prior grant of asylum was insufficient to establish a presumption of a well-founded fear of future persecution based on past persecution. We agree.

**[4]** Here, neither the record nor Robleto's own testimony establishes past persecution. While Robleto's original asylum application identifies incidents from the early 1980s involving his brothers, Sergio and Alvaro, it contains no allegation that Robleto himself was persecuted. *See Prasad v. INS*, 47 F.3d 336, 340 (9th Cir. 1995) (concluding that "attacks on family members do not necessarily establish a well-founded fear of persecution absent a pattern of persecution tied to the petitioner[ ]"). Moreover, Robleto acknowledged during the immigration proceedings that, other than losing his job, he was not personally targeted by the Sandinistas. Even in his 2006 application for asylum and withholding of removal, Robleto identified no instances of persecution involving himself. Based on Robleto's failure to establish that his prior grant of asylum was based on past persecution, we conclude that the BIA correctly determined that he was not entitled to a presumption of a well-founded fear of persecution.

Furthermore, we find that the record supports the BIA's determination that Robleto failed to show a likelihood of future persecution in Nicaragua. Robleto presented no evidence indicating that the current administration persecutes former employees of the Somoza government or family members of those who opposed the Sandinistas more than twenty years ago. Moreover, Robleto failed to present a plausible basis for his alleged fear of returning to Nicaragua. Rather, he testified that he thought that the current Nicaraguan administration would think he was an American spy because he had unsuccessfully tried to enlist in the United States Army in the early 1990s. He did not indicate how the administration would know this fact, or why it would lead the government to believe he was a spy, or even that the government actually persecutes American "spies." Finally, he offered no evidence

that any family member or former government employee is persecuted by the current Nicaraguan administration, and indicated that several of his aunts and uncles from both sides of his family, and at least one grandparent, still live in Nicaragua.

**[5]** Based on this record, we are not compelled to reach a conclusion contrary to the BIA's. *See Khourassany*, 208 F.3d at 1100. Neither can we conclude that petitioner is entitled to relief under the CAT, as there was no evidence regarding a likelihood that Robleto would be tortured upon his return. *See Hamoui v. Ashcroft*, 389 F.3d 821, 826-27 (9th Cir. 2004) (noting that to be eligible for withholding under the CAT, the applicant must establish that he is "more likely than not" to be tortured upon removal). Based on the foregoing, we conclude that the BIA's determination is supported by the record, and that Robleto is not entitled to withholding from removal under the INA or the CAT.

## C.   Relief under Section 209(b) and (c)

**[6]** Robleto asserts that he can avoid removal by "readjusting" his status to that of a lawful permanent resident under section 209(b) in connection with a waiver of inadmissibility under 209(c). Section 209(b) allows an asylee to adjust status to that of LPR, but requires that the asylee be otherwise admissible. 8 U.S.C. § 1159(b)(5). Petitioner concedes inadmissibility based on his aggravated felony conviction, and seeks to overcome this barrier to adjustment through a waiver of inadmissibility pursuant to section 209(c). Section 209(c) provides the Secretary of Homeland Security or the Attorney General with discretion to waive inadmissibility "for humanitarian purposes, to assure family unity, or when it is otherwise in the public interest." 8 U.S.C. § 1159(c).

**[7]** Despite having already obtained LPR status in 1988, petitioner contends that he is eligible for relief under section 209 because his asylee status was never terminated, and that

he therefore holds asylee status and LPR status simultaneously.[5] Without deciding and regardless of whether Robleto simultaneously holds asylee and LPR status, we conclude that he is ineligible for relief from removal under section 209 of the INA, 8 U.S.C. § 1159, and that his petition must therefore be denied.

Section 209(b) provides as follows:

> The Secretary of Homeland Security or the Attorney General . . . may *adjust to the status of an alien lawfully admitted for permanent residence the status of any alien granted asylum* who—
>
>> (1) applies for such adjustment,
>>
>> (2) has been physically present in the United States for at least one year after being granted asylum,
>>
>> (3) continues to be a refugee within the meaning of section 1101(a)(42)(A) of this title or a spouse or child of such a refugee,

---

[5]Petitioner premises his argument for relief under § 209 on the fact that his asylum status was never formally terminated. He asserts that section 208(c)(3) of the INA and its attendant regulations require formal termination of asylum status prior to removal. Section 208(c)(3), however, simply provides that asylum may be terminated under specific circumstances and says nothing about formal termination proceedings. 8 U.S.C. § 1158(c)(3). Further, in the analogous context of refugees who have obtained LPR status, we have held that formal termination of refugee status is not a precondition to removal. *Kaganovich v. Gonzales*, 470 F.3d 894, 897 (9th Cir. 2006) (noting that "regardless of whether a refugee loses refugee status upon adjusting status to lawful permanent resident . . . the refugee may be removed") (citing *In re Smriko*, 23 I & N Dec. 836, 842 (BIA 2005)); *see also Stolaj v. Holder*, 577 F.3d 651, 657 (6th Cir. 2009) (holding that formal termination of asylum status was not a precondition to removing a lawful permanent resident).

(4) is not firmly resettled in any foreign country, and

(5) is admissible . . . .

8 U.S.C. § 1159(b) (emphasis added). By its own terms, section 209(b) applies to *asylees* seeking to adjust status to that of LPR, a process petitioner completed in 1988. It says nothing about a lawful permanent resident "re-adjusting" his status to that of lawful permanent resident. Nor does section 209 provide that such adjustment of status is a means to avoid removal. *Cf. Abebe v. Mukasey*, 554 F.3d 1203, 1205 (9th Cir. 2009) (en banc) (construing former section 212(c) of the INA in accordance with its plain language as only providing discretionary relief from inadmissibility — *not* deportation). Petitioner cites no authority, nor could we find any, providing that an asylee who acquires LPR status is eligible for relief from removal under section 209.[6] Morever, relevant authority indicates that aliens retain their LPR status until a final order of removal. *See* 8 C.F.R. § 1001.1(p).[7] Thus, regardless of

---

[6]Petitioner cites several BIA cases in which lawful permanent residents were permitted to seek relief from removal by "re-adjusting" status to that of LPR pursuant to section 245(a) of the INA in connection with section 212's various waiver provisions. Those cases are inapposite as they concern distinct statutes which apply to broad classes of aliens who have immigrant visas immediately available. *See In re Mendez-Moralez*, 21 I. & N. Dec. 296 (BIA 1996); *Matter of Gabryelsky*, 20 I. & N. Dec. 750 (BIA 1993). By contrast, section 209(b) is specific to asylees, and it has never been construed to apply to asylees who have already obtained LPR status and who merely seek to avoid removal. *See In re K-A-*, 23 I. & N. Dec. 661 (BIA 2004) (concluding that an asylee could apply for relief from removal under section 209(b) and (c) where she had not previously acquired LPR status).

[7]That section defines "[t]he term lawfully admitted for permanent residence" as "the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed. *Such status terminates upon entry of a final administrative order of exclusion, deportation, removal, or rescission*." (emphasis added).

whether petitioner retained his asylee status simultaneously with his LPR status, there is no dispute that he remained an LPR until a final order of removal. Accordingly, as an asylee who already acquired LPR status, section 209(b) does not apply to him, and by extension, the waiver of inadmissibility under section 209(c) is also foreclosed. We therefore affirm the BIA's decision and hold that an alien who has previously adjusted status to that of LPR retains that status until a final order of removal and cannot "re-adjust" status to that of an LPR under section 209(b) in order to avoid removal.

**[8]** We find support for our perspective in cases from our sister circuits, which have held that *refugees* who adjust status to lawful permanent resident are ineligible for relief from removal under section 209(a) in connection with a waiver of inadmissibility under section 209(c). *Gutnik v. Gonzales*, 469 F.3d 683, 692 (7th Cir. 2006) (holding that an alien who adjusted status from refugee to LPR was no longer eligible to apply for a waiver of inadmissibility in connection with an adjustment of status under section 209); *Saintha v. Mukasey*, 516 F.3d 243, 252-53 (4th Cir. 2008) (applying *Chevron* deference to the BIA's determination that a refugee who had already acquired LPR status was precluded from subsequently re-adjusting to LPR status).

While these cases involve section 209(a), which concerns adjustment of status from *refugee* to LPR, they are nonetheless instructive. In *Gutnik*, the Seventh Circuit deferred to the BIA's determination that relief under section 209 was unavailable to a removable refugee who had previously adjusted his status to that of LPR. *Gutnik*, 469 F.3d at 692. The BIA noted that allowing Gutnik to apply for a waiver under section 209(c) would place "him at an unfair advantage over other aliens and would improperly insulate him from his criminal misconduct which occurred many years after his arrival as a refugee." *Id.* at 689. This reasoning echoes the concern we voiced in *Kaganovich* in deciding that refugee status should not be used to insulate aliens from the otherwise

applicable removal statute. 470 F.3d at 898 (finding persuasive the BIA's holding in *In re Smriko*, 23 I. & N. Dec. 836 (BIA 2005) that 8 U.S.C. § 1157(c)(4) should not be read to shield refugees from the INA's general removal provision).

Similarly, in *Saintha*, the Fourth Circuit deferred to the BIA's interpretation of section 209(a)(1) as precluding relief from removal for a refugee who had previously acquired LPR status.[8] *Saintha*, 516 F.3d at 247, 253. The BIA rejected Saintha's application to adjust status a second time under section 209(a) in connection with a waiver of inadmissibility under section 209(c), concluding that the plain language of section 209(a)(1) precluded "a refugee who has already acquired LPR status . . . from subsequently re-adjusting to LPR status." *Id.* at 247. More specifically, the BIA read section 209(a)(1) as providing three criteria for adjusting status, one of which requires the alien not to have already "acquired permanent resident status." *Id.* at 253. Because Saintha had already acquired LPR status, he could not satisfy this criterion, and

---

[8]Section 209(a)(1) provides in relevant part:

a) Criteria and procedures applicable for admission as immigrant; effect of adjustment.

(1) Any alien who has been admitted to the United States under section 1157 of this title —

(A) whose admission has not been terminated by the Secretary of Homeland Security or the Attorney General pursuant to such regulations as the Secretary of Homeland Security or the Attorney General may prescribe,

(B) who has been physically present in the United States for at least one year, and

(C) *who has not acquired permanent resident status*,

shall, at the end of such year period, return or be returned to the custody of the Department of Homeland Security for inspection and examination for admission to the United States as an immigrant in accordance with the provisions of sections 1225, 1229a, and 1231 of this title.

8 U.S.C. § 1159(a)(1) (emphasis added).

therefore was ineligible to adjust status a second time. *Id.* The Fourth Circuit agreed with the BIA's interpretation, noting that it was "logical to conclude that an alien . . . who has previously acquired permanent resident status but was later rendered removable by the commission of multiple crimes, is ineligible to acquire LPR status again under § 1159." *Id.*

We find the Fourth and Seventh Circuits' interpretation of section 209(a) to be persuasive, and we see no reason why we should read 209(b) in a contrary manner with respect to asylees who have acquired lawful permanent resident status. Although section 209(a) explicitly provides that adjustment under that section is unavailable to refugees who have already "acquired permanent resident status," *see* 8 U.S.C. § 1159(a)(1)(C), and section 209(b) contains no such provision, the language of section 209(b) is nonetheless plain. It provides the Secretary of Homeland Security or the Attorney General with discretion to "adjust to the status of an alien lawfully admitted for permanent residence the status of any alien granted asylum . . . ." 8 U.S.C. § 1159(b). Simply put, it allows the government to adjust an alien's status from asylee to LPR; it does not permit "re-adjustment" of status for asylees who have already acquired LPR status and we decline to expand the statute's coverage to such individuals. To do so would provide unique relief to asylees who have acquired LPR status, while precluding such relief for similarly situated refugees, many of whom, unlike petitioner, will not have been convicted of an aggravated felony.

Significantly, the legislative history of the INA's asylum provisions supports our reluctance to treat refugees and asylees disparately, as it indicates that the two classes of aliens were to have essentially "equivalent status" under the law. The INA's asylum provisions were enacted into law pursuant to the Refugee Act of 1980. The Refugee Act, in addition to "regulariz[ing] the procedures governing the admission of refugees into the United States," *INS v. Stevic*, 467 U.S. 407, 425 (1984), required the Attorney General to establish

procedures for "determining asylum claims filed by aliens who are physically present in the United States." Refugee Act of 1980, S. Rep. No. 96-256, at 9 (1980), *reprinted in* 1980 U.S.C.C.A.N. 141, 149. The legislative history shows that Congress saw asylees and refugees as having similar status under the law, indicating that those granted asylum were to be "placed into *a conditional admission status equivalent in most respects to that provided under current law to refugees*." *Id.* (emphasis added).

**[9]** Nothing in the legislative history indicates that asylum status was so distinct that it conferred an exemption from statutes governing the conduct of other aliens admitted to the United States, or otherwise provided additional relief from removal that was unavailable to refugees. *See Kaganovich*, 470 F.3d at 898 (agreeing with BIA's determination that INA's refugee provisions could not be read to immunize refugees from the INA's removal provision). Consistent with this history, we decline to read section 209(b) as providing asylees who have acquired LPR status with additional avenues for avoiding removal that are otherwise foreclosed to similarly situated refugees.

**[10]** In sum, at the time of his request for "re-adjustment" of status, Robleto retained his LPR status. *See* 8 C.F.R. § 1001.1(p). Section 209(b), by its plain language, contemplates an asylee's adjustment of status to LPR, and does not extend relief to aliens who have already acquired LPR status. This natural reading of section 209(b) is consistent with decisions of the Seventh and Fourth Circuits in the analogous context of refugees who have previously adjusted status, and with our prior decision in *Kaganovich*. Because petitioner advances no other theory of relief from removal, we deny his petition and hold that an alien who acquired lawful permanent resident status based on a prior grant of asylum may not "re-apply" for LPR status under section 209 in order to avoid removal.

### D. Due Process Claim

Finally, petitioner asserts that the IJ denied him due process by denying his request for a continuance to obtain his immigration records.

[11] "[A]n alien who faces deportation is entitled to a full and fair hearing of his claims and a reasonable opportunity to present evidence on his behalf." *Colmenar v. INS*, 210 F.3d 967, 971 (9th Cir. 2000); *see also Cano-Merida v. INS*, 311 F.3d 960, 964 (9th Cir. 2002). In order to show a due process violation, an applicant must show prejudice. *Cano-Merida*, 311 F.3d at 965. Prejudice is shown where the violation potentially affected the outcome of the proceedings. *Id.*

[12] Petitioner fails to establish prejudice. Although the IJ conducted the removal proceedings in the absence of petitioner's full immigration file, petitioner was able to present his claims for relief without it. Moreover, the BIA had the full record before it when examining petitioner's appeal. As set forth above, nothing in petitioner's file changes the fact that he is currently ineligible for asylum. Moreover, even after examining petitioner's full immigration file, the BIA determined that petitioner failed to establish that his prior grant of asylum was based on actual, past persecution or that he was likely to suffer persecution upon return to Nicaragua. We find that the record supports this view. Accordingly, petitioner has failed to show that a continuance would have affected the outcome of the proceedings.

### III.

[13] Based on the foregoing, we conclude that the BIA did not err in denying petitioner's applications for asylum and withholding of removal under the INA and the CAT. Further, we conclude that petitioner retained his status as a lawful permanent resident during the removal proceedings, and therefore was not eligible to seek relief from removal under section

209(b) of the INA in connection with a waiver of inadmissibility under section 209(c). Finally, we conclude that the denial of petitioner's request for a continuance does not amount to a due process violation. Accordingly, the petitions for review are **DENIED**.