# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 12-60546

United States Court of Appeals
Fifth Circuit

**FILED**
February 6, 2014

Lyle W. Cayce
Clerk

JOEL HAPPY SIWE, also known as Joel Monthe Knouobite,

Petitioner

v.

ERIC H. HOLDER, JR., U.S. ATTORNEY GENERAL,

Respondent

Petitions for Review of Orders of the
Board of Immigration Appeals

Before JONES, WIENER, and GRAVES, Circuit Judges.

WIENER, Circuit Judge:

Petitioner Joel Happy Siwe ("Siwe"), a native and citizen of Cameroon, arrived in the United States in August 2001 on a visitor's visa. He subsequently applied for and was granted asylum. Several years later, the government instituted removal proceedings because of Siwe's criminal convictions, discussed below. Before the Immigration Judge ("IJ"), Siwe argued that he should not be removed because he was entitled to adjust his status from asylee to lawful permanent resident under Section 209(b) of the Immigration and Nationality Act of 1952 ("INA").[1] He also contended that he was entitled to deferral of removal under the United Nations Convention

---

[1] 8 U.S.C. § 1159(b).

No. 12-60546

Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT").  The IJ rejected Siwe's requests for relief and ultimately ordered him removed from the United States.  A one-member panel of the Board of Immigration Appeals ("BIA" or "the Board") affirmed.  Siwe now seeks review of the Board's decision.[2]  Because we hold that the plain language of the statute does not require an alien to maintain asylum status to be eligible for an adjustment of status under Section 209(b), we grant his petition for review on that issue and vacate the order of removal.  We do not review Siwe's request for relief under the CAT, however, because we are bound by our precedent[3] holding that the REAL ID Act[4] divests us of subject matter jurisdiction to do so.

## I.  FACTS AND PROCEEDINGS

After entering the United States in 2001, Siwe applied for asylum on the ground that he and his family were targets of official government persecution for their political activities.  Siwe claimed that he was subjected to such persecution because the Cameroon government suspected that his uncle, a colonel in the Cameroon military, had been planning a *coup d'état*.  The uncle

---

[2] Because the BIA entered two separate orders in Siwe's case, he timely filed two petitions in this court—Nos. 12-60546 and 12-60698—each addressing a different one of the orders.  The petitions were consolidated for consideration, but, for simplicity, we refer to them in the singular, i.e., as "the petition."

[3] *Escudero-Arciniega v. Holder*, 702 F.3d 781 (5th Cir. 2012) (per curiam).

[4] *See* INA § 242(a)(2)(C), 8 U.S.C. § 1252(a)(2)(C); *Vo v. Gonzales*, 482 F.3d 363, 366 (5th Cir. 2007) ("The REAL ID Act amended 8 U.S.C. § 1252 to preclude judicial review of any removal order based on, *inter alia*, commission of an aggravated felony.  However, the Act also provides that none of its provisions shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review.  This court therefore has jurisdiction to decide the legal and constitutional questions raised by [the petitioner].") (internal citations and quotation marks omitted).

2

had died under mysterious circumstances which Siwe characterizes as an assassination, even though local law enforcement charged the uncle's son (Siwe's cousin) with the murder. Siwe stated that local law enforcement tortured him in 1999 and 2000 because he was alleged to have knowledge of his uncle's activities and his cousin's role in the murder. The United States granted Siwe asylum in November 2003 pursuant to Section 208.[5]

Sometime in 2002 or 2003, Siwe became involved in a "black money scheme."[6] That scam, in which victims across several states from Virginia to New Mexico were defrauded, involved six co-conspirators in addition to Siwe.[7] He was indicted on several counts in 2006 in the Eastern District of Virginia and was eventually convicted by a jury.[8] In May 2007, he was sentenced to 32 months of imprisonment on each count and ordered to serve the terms concurrently.

Following Siwe's release from prison, the Department of Homeland Security ("DHS") commenced removal proceedings. In June 2011, the DHS served him with a notice to appear, charging that he was an alien convicted of

---

[5] 8 U.S.C. § 1158.

[6] A black money scheme is one in which the perpetrator, by sleight of hand, convinces the victim that he can duplicate cash. The victim then gives the perpetrator a large amount of cash for the perpetrator to duplicate offsite. Instead of delivering the duplicated cash as promised, the perpetrator absconds with the victim's money.

[7] The superseding indictment alleged that the conspiracy caused at least $287,000 in losses.

[8] Siwe was convicted of (1) one count of conspiracy to commit an offense against or to defraud the United States, in violation of 18 U.S.C. § 371; (2) one count of altering United States currency, in violation of 18 U.S.C. §§ 2 and 471; and (3) two counts of causing a person to move in interstate commerce to be defrauded, in violation of 18 U.S.C. §§ 2 and 2314.

an aggravated felony[9] after admission, within the meaning of Sections 237(a)(2)(A)(iii)[10] and 101(a)(43)(M)(i).[11]  DHS formally moved to terminate Siwe's asylum on July 25, 2011.  Siwe opposed the motion, arguing that he was entitled to an opportunity to adjust his status to lawful permanent resident pursuant to Section 209(b)[12] and to request a waiver of admissibility pursuant to Section 209(c).[13]

The IJ terminated Siwe's asylum in August 2011 because his conspiracy conviction[14] constituted an aggravated felony that was a particularly serious crime.[15]  After the IJ pretermitted his request to adjust status, Siwe moved for reconsideration, asserting that termination of his asylum did not disqualify him from applying to adjust his status to lawful permanent resident.  The IJ denied Siwe's motion to reconsider.

After further hearings, the IJ determined that Siwe was removable as an alien convicted of aggravated felonies.  Siwe responded by filing an

---

[9] "The term 'aggravated felony' means— . . . (M) an offense that—(i) involves fraud or deceit in which the loss to the victim or victims exceeds $10,000; or (ii) is described in section 7201 of title 26 (relating to tax evasion) in which the revenue loss to the Government exceeds $10,000; . . . (U) an attempt or conspiracy to commit an offense described in this paragraph." 8 U.S.C. § 1101(a)(43)(M) & (a)(43)(U).

[10] 8 U.S.C. § 1227(a)(2)(A)(iii).

[11] 8 U.S.C. § 1101(a)(43)(M)(i) & (a)(43)(U).

[12] 8 U.S.C. § 1159(b).

[13] 8 U.S.C. § 1159(c).

[14] 18 U.S.C. § 371.

[15] The IJ found that Siwe "ha[d] been convicted of a conspiracy to defraud offense in which the loss to the victim exceeded $10,000."  *See* 8 U.S.C. §§ 1101(a)(43)(M)(i), (a)(43)(U) & 1227(a)(2)(A)(iii).

application for withholding of removal pursuant to Section 241(b)(3)[16] and for deferral of removal under the CAT pursuant to 8 C.F.R. § 1208.17. In February 2012, the IJ issued a written decision (1) reiterating that Siwe was subject to removal because he had been convicted of aggravated felonies; (2) holding him ineligible for withholding of removal under Section 241(b)(3)[17] because he had been convicted of a particularly serious crime; and (3) ruling that he was ineligible for deferral of removal under the CAT because he had failed to establish that it was more likely than not that he would be tortured by the government if he were removed to Cameroon. The IJ then ordered Siwe removed to Cameroon.

Siwe appealed the IJ's decisions to the BIA. A one-member panel of the BIA dismissed the appeal in June 2012, holding that (1) the IJ correctly determined that Siwe was statutorily ineligible to adjust status under Section 209(b) because his asylum had been terminated, and (2) when denying CAT relief, the IJ properly disregarded as not credible Siwe's evidence that he would be tortured if removed to Cameroon. Siwe timely moved for reconsideration by a three-member panel of the Board, contending that the BIA had failed to address his insistence that termination of his asylum did not disqualify him from applying for adjustment of status. A one-member panel of the Board denied the motion to reconsider.

Siwe timely petitioned for review by this court, and moved for a stay of removal pending our decision. We granted his stay motion in September 2012, after which the government filed a motion to remand the proceedings for the limited purpose of allowing the BIA to reconsider its denial of adjustment of

---

[16] 8 U.S.C. § 1231(b)(3).

[17] 8 U.S.C. § 1231(b)(3).

status under Section 209(b).  In March 2013, we carried that motion with the case.  In addition to the government's motion to remand, Siwe asks us to answer the following questions: (1) Did the Board err as a matter of law in concluding that the termination of Siwe's asylum rendered him ineligible for an adjustment of status under Section 209(b), (2) was the Board's affirmance of the IJ's denial of CAT relief supported by substantial evidence, and (3) did the Board abuse its discretion when it failed to hear Siwe's motion for reconsideration by a three-member panel?  We answer each in turn.

## II. ANALYSIS

### A.    Adjustment of Status under Section 209(b)

Section 209(b) provides that "any alien granted asylum" may adjust status to lawful permanent resident if he satisfies five criteria.[18]  Siwe urges that the termination of his asylum does not, as a matter of law, render him ineligible for an adjustment of status because—according to Siwe—there is "no requirement [in the statute] that aliens who have been granted asylum . . . in the past must maintain their asylum status prior to applying for or receiving an adjustment of status."  The statute, Siwe insists, is unambiguous: He must be permitted to apply for an adjustment of status.  The government has moved to remand to the BIA for reconsideration of this specific issue because the Board did not "fully address" Siwe's argument.[19]  For the first time at oral

---

[18] *See* 8 U.S.C. § 1159(b).

[19] The IJ ruled that because she, in her discretion, first terminated Siwe's asylum status, she no longer had authority to consider his application for adjustment of status. On appeal, the BIA upheld the IJ's "determination that [Siwe] was not statutorily eligible to pursue an adjustment of status," but did not further explain its reasoning why he was ineligible.  Siwe moved for reconsideration, advancing the same arguments he now makes to us regarding Section 209(b).  The BIA again denied Siwe's request, but it did not explain its reasoning, stating only that it had "considered his arguments in [the] June 27, 2012[] decision, [was] not persuaded by his statutory interpretation of section 209 of the [INA]" and was furthermore

argument in this court, the government added that case law in other circuits indicates that Siwe's reading of the statute is incorrect.[20]  The parties agree, however, that neither the BIA nor any other circuit has dealt with this *precise* legal issue under analogous facts.

The REAL ID Act prevents courts from reviewing final orders of removal of aliens, like Siwe, for having committed aggravated felonies.[21]  This jurisdictional bar to court review does not, however, apply to questions of law.[22] Furthermore, we must "review[] the BIA's legal conclusions *de novo* 'unless a conclusion embodies the [BIA's] interpretation of an ambiguous provision of a statute that it administers; a conclusion of the latter type is entitled' " to deference.[23]  We have recently stated[24] the level of deference that we give to unpublished, one-member BIA decisions like the one we review in this case: This circuit reviews such decisions under the less deferential standard of

---

"not convinced . . . that [its] prior decision contained legal or factual errors which render[ed] reconsideration of that decision necessary."

[20] As Siwe emphasized in his reply brief, the government did not argue—either in its motion to remand or in its brief—that Siwe's interpretation of the statute was incorrect or that the statute is ambiguous.

[21] *See* INA § 242(a)(2)(C), 8 U.S.C. § 1252(a)(2)(C); *Vo*, 482 F.3d at 366.

[22] *See* INA § 242(a)(2)(C), 8 U.S.C. § 1252(a)(2)(C); *Vo*, 482 F.3d at 366.

[23] *Orellana-Monson v. Holder*, 685 F.3d 511, 517 (5th Cir. 2012) (quoting *Singh v. Gonzalez*, 436 F.3d 484, 487 (5th Cir. 2006)).

[24] *See Dhuka v. Holder*, 716 F.3d 149, 157 (5th Cir. 2013) ("The BIA's *precedential* decisions on which its current analysis relies are entitled to *Chevron* deference . . . .") (emphasis added); *see also Nguyen v. Holder*, __ F. App'x __, 2013 WL 5680192, at *5 (5th Cir. Oct. 21, 2013) (unpublished) ("In this case, the BIA's interpretation of Nguyen's eligibility for a[n] [INA] § 209(c) waiver is a single-member decision and thus non-precedential.  Therefore, the decision should be reviewed under *Skidmore* deference.") (citing *Dhuka*, 716 F.3d at 157).

No. 12-60546

*Skidmore*.[25] Under the *Skidmore* standard, " 'the weight of [an agency's] judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.' "[26] Additionally, any portion of a non-precedential decision that relies on prior precedential BIA decisions will be afforded *Chevron*[27] deference as appropriate.[28] As Siwe asks us to construe Section 209(b), we have jurisdiction to consider this pure question of law and turn first to the plain language of the statute.[29]

---

[25] *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944).

[26] *Mushtaq v. Holder*, 583 F.3d 875, 877 n.3 (5th Cir. 2009) (quoting *Skidmore*, 323 U.S. at 140).

[27] *Chevron* deference involves a two-step inquiry:

> Under *Chevron*, when reviewing an agency's construction of a statute that it administers, a court must determine first whether Congress has directly spoken to the question at issue. If so, the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If not, the court must determine whether the agency's answer is based on a permissible construction of the statute. If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. Courts give agency interpretations controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute.

*Orellana-Monson*, 685 F.3d at 517 (citing *Chevron*, 467 U.S. at 842-44) (internal quotation marks omitted).

[28] *Dhuka*, 716 F.3d at 157; *Nguyen*, 2013 WL 5680192, at *5.

[29] *Vo*, 482 F.3d at 366.

8

No. 12-60546

Section 209(b)[30] lists five conjunctive conditions that "any alien granted asylum" must meet to be eligible for adjustment of status:

> The Secretary of Homeland Security or the Attorney General, in the Secretary's or the Attorney General's discretion and under such regulations as the Secretary or the Attorney General may prescribe, may adjust to the status of an alien lawfully admitted for permanent residence the status of any alien granted asylum who—
>
> (1) applies for such adjustment,
>
> (2) has been physically present in the United States for at least one year after being granted asylum,
>
> (3) continues to be a refugee within the meaning of section 101(a)(42)(A) [of the INA] or a spouse or child of such a refugee,
>
> (4) is not firmly resettled in any foreign country, and
>
> (5) is admissible (except as otherwise provided under subsection (c)) as an immigrant under this Act at the time of examination for adjustment of such alien. . . .

Nowhere in this section does Congress require that an alien's asylum, once granted, still must be in effect at the time he applies for adjustment of status: Such a requirement is conspicuously absent. To conclude otherwise would be to contravene the Supreme Court's exhortation that we "add[] no unwritten requirements to the text."[31]

---

[30] 8 U.S.C. § 1159(b).

[31] *Khalid v. Holder*, 655 F.3d 363, 374 (5th Cir. 2011) (citing *Bates v. United States*, 522 U.S. 23, 29 (1997) ("[W]e ordinarily resist reading words or elements into a statute that do not appear on its face.")).

9

No. 12-60546

Furthermore, even if we were to assume that the phrase "any alien granted asylum" is ambiguous, the inclusion of two different continuing-status requirements in Section 209 confirms that Congress purposefully omitted any such condition regarding asylum. First, Section 209(a)—which applies only to *refugees*—explicitly mandates that admission as a refugee must "*ha[ve] not been terminated*" before the applicant's status may be adjusted pursuant to Section 209(a).[32] Second, Section 209(b)(3), which applies to asylees, mandates that an asylee seeking to adjust status must "continue[] to be a refugee." Clearly, Congress knows how to impose a continuing-status requirement when it wishes to do so. *Inclusio unius est exclusio alterius.*

Finally, were we to read Section 209 as do the IJ and the BIA, such a construction would obviate the need for the waiver mechanism set forth in

---

[32] INA § 209(a), 8 U.S.C. § 1159(a) (emphasis added), provides in pertinent part:

> Any alien who has been admitted to the United States under section 207 [of the INA as a refugee]—
>
>> (A) *whose admission has not been terminated* by the Secretary of Homeland Security or the Attorney General pursuant to such regulations as the Secretary of Homeland Security or the Attorney General may prescribe,
>>
>> (B) who has been physically present in the United States for at least one year, and
>>
>> (C) who has not acquired permanent resident status,
>
> shall, at the end of such year period, return or be returned to the custody of the Department of Homeland Security for inspection and examination for admission to the United States as an immigrant in accordance with the provisions of sections 235, 240, and 241 [of the INA].

10

Section 209(c).[33]  Section 209(b)(5) requires that an alien must be admissible before his status may be adjusted.[34]  An alien may be inadmissible for any of myriad reasons, including having been convicted of specified felonies, as was Siwe.[35]  Section 209(c) enables an alien to obtain a waiver of the admissibility requirement when, in the discretion of the relevant reviewing official, allowing the alien to adjust status would serve humanitarian purposes, assure family unity, or otherwise serve the public interest.[36]  To decree that an alien whose asylum has been terminated based on particular conduct, as, for example, an aggravated felony conviction, is thereby prohibited from applying for an adjustment of his status to lawful permanent resident, even though that same transgression might be excusable for purposes of admissibility, would vitiate the discretion afforded to the Secretary of DHS and the U.S. Attorney General.[37]  Congress specifically vested those officials with the discretion to permit otherwise removable aliens to remain in the United States because, under some set of circumstances, allowing them to do so better serves the greater public interest than would removal.  The government's proposed

---

[33] *Khalid*, 655 F.3d at 367 ("[A] statutory provision cannot be read in isolation, but necessarily derives meaning from the context provided by the surrounding provisions, as well as the broader context of the statute as a whole."); *see also* INA § 209(c), 8 U.S.C. § 1159(c) (providing that the Secretary of DHS or the U.S. Attorney General may waive Section 209(b)'s admissibility requirement for "humanitarian purposes, to assure family unity, or when it is otherwise in the public interest").

[34] 8 U.S.C. § 1159(b)(5).

[35] *See* INA § 208(c)(2)(B), 8 U.S.C. § 1158(c)(2)(B).

[36] 8 U.S.C. § 1159(c).  We note that a Section 209(c) waiver may *not* be granted for several grounds of inadmissibility, such as drug trafficking, espionage, and terrorist activities.  *See* 8 U.S.C. §§ 1182(a)(2)(C), (a)(3)(A) & (a)(3)(B).

[37] *See* 8 U.S.C. § 1159(c).

11

No. 12-60546

alternative interpretation—that any alien whose asylum has been terminated is barred *ipso facto* from applying for adjustment of status—would effectively abrogate Congress's careful balancing of interests, as codified in Section 209(c).

Furthermore, the case law on which the government relies in opposing Siwe's interpretation of Section 209(b) is not persuasive. First, the government cites the BIA's precedential decision in *Matter of K-A-*[38] as authority for the proposition that the Board has implicitly concluded that an alien whose asylum has been terminated may not seek adjustment of status under Section 209(b). In *K-A-*, the respondent—a citizen of Nigeria and mother of two U.S. citizen children, one of whom suffered from cerebral palsy—entered the United States on a non-immigrant visa and was later granted asylum.[39] Less than five years following admission, she was convicted of a crime of moral turpitude[40] and an aggravated felony, and the government instituted removal proceedings, formally requesting that the IJ terminate the respondent's asylum. The respondent conceded that she was removable, but also filed an application for adjustment of status under Section 209(b), urging that she should be permitted to adjust status to avoid hardship to her severely disabled U.S. citizen child.[41] The IJ acknowledged that the respondent's asylum was subject to termination, but exercised discretion and granted the respondent a waiver under Section

---

[38] 23 I. & N. Dec. 661 (B.I.A. 2004).

[39] *Id.* at 662.

[40] "Moral turpitude" is defined at INA § 237(a)(2)(A)(i), 8 U.S.C. § 1227(a)(2)(A)(i).

[41] *Matter of K-A-*, 23 I. & N. Dec. at 662.

12

209(c), adjusting the respondent's status to lawful permanent resident rather than ordering her to be removed.[42]

On appeal to the BIA, the government claimed that the IJ erred in adjudicating the respondent's Section 209(b) application at a time when her asylum was subject to termination. The government insisted that the IJ was "obliged to adjudicate its request for termination of the respondent's asylee status before considering any of her applications for relief."[43] The BIA rejected this contention, holding that the relevant statutory language regarding termination was permissive and that the IJ had the discretion to consider the respondent's Section 209(b) application first.[44]

At oral argument in the instant appeal, the government contended that the BIA's reasoning in *K-A-* implies that the Board has rejected Siwe's reading of Section 209(b); thus, if an IJ has the discretion to consider a Section 209(b) application before terminating an alien's asylum, it follows that termination of an alien's asylum necessarily renders him ineligible for a subsequent adjustment of status to lawful permanent resident. We disagree. The fact that an IJ has discretion as to the sequence in which to consider one alien's multiple

---

[42] *Id.*

[43] *Id.* at 663. The government also raised another issue in *K-A-* that is not germane to Siwe's case.

[44] *Id.* at 665 ("Both section 208(c)(2) of the [INA] and its implementing regulation, 8 C.F.R. § 1208.24, provide that the Attorney General *may* determine whether an enumerated basis for termination of asylum exists and that the Attorney General *may* terminate an alien's asylee status if such a basis is found to exist. The statute, by its terms, does not provide for *automatic* termination of asylee status; rather, it authorizes—but does not compel—the Attorney General to act. Viewing the statutory and regulatory language in this light, we find no reversible error in the Immigration Judge's decision to defer judgment on the termination question pending consideration of the respondent's applications for relief under sections 209(b) and (c) of the [INA].") (emphasis in original).

requests for relief does not automatically mandate that such an alien may not apply to adjust status following loss of asylum absent express statutory language to that effect. *K-A-*, therefore, does not dictate acceptance of the government's proffered interpretation; neither does it somehow cast shadows of ambiguity on the plain language of the statute.

Second, the government relies on case law from the Seventh and Ninth circuits to argue that an asylee like Siwe may not adjust status pursuant to Section 209(b). Neither cited case, however, is dispositive of this issue. In the Seventh Circuit's *Sharashidze* opinion, the petitioner—who had been granted asylum in 1999—was convicted in 2002 of indecent solicitation of a sex act in Illinois, a misdemeanor offense under state law.[45] The person solicited was a child under the age of thirteen. Thereafter, the government instituted removal proceedings, charging that the petitioner had committed the aggravated felony of sexual abuse of a minor.[46] The IJ terminated the petitioner's asylum and pretermitted his application to adjust status under Section 209(b); the BIA affirmed. On petition to the Seventh Circuit, the petitioner argued that IJ violated his due process by "improperly den[ying] him the opportunity to present evidence of countervailing equities that could be weighed against DHS's interest in deporting aggravated felons."[47] The court did not reach the

---

[45] *Sharashidze v. Gonzales*, 480 F.3d 566, 567 (7th Cir. 2007).

[46] *Id.* at 568 (stating that the petitioner was removable under 8 U.S.C. § 1227(a)(2)(A)(iii) because he committed an aggravated felony as defined by 8 U.S.C. § 1101(a)(43)(A) (classifying sexual abuse of a minor as an aggravated felony)).

[47] *Id.* at 569-70. The petitioner also challenged the IJ's holding that indecent solicitation of a sex act, a misdemeanor in Illinois, was an aggravated felony for the purposes of the INA. *See id.* at 568-69. The Seventh Circuit's reasoning as to that argument is irrelevant in this case.

14

No. 12-60546

merits of the due process claim; instead, the court dismissed it for lack of jurisdiction, holding that the petitioner had failed to raise the claim before the BIA.[48]    *Sharashidze*, therefore, does not support the government's interpretation of Section 209(b).

Likewise, in the Ninth Circuit's *Robleto-Pastora* case, the petitioner— who had been granted asylum in 1986—successfully adjusted his status to lawful permanent resident in 1988.[49]  In 2005, he pleaded guilty to six state counts of forgery in Oregon.[50]  The government, as a result, instituted removal proceedings.  The petitioner sought to avoid removal by "*re*-adjusting" his status to lawful permanent resident pursuant to Section 209(b), in conjunction with a waiver of inadmissibility pursuant to Section 209(c), arguing that he was "eligible for relief under section 209 because his asylee status was never terminated, and that he therefore h[eld] asylee status and LPR status simultaneously."[51]    The Ninth Circuit rejected the petitioner's reasoning, holding:

> [A]s an asylee *who already acquired LPR status*, section 209(b) does not apply to him, and by extension, the waiver of inadmissibility under section 209(c) is also foreclosed. We therefore affirm the BIA's decision and hold that an alien who has previously adjusted status to that of LPR retains that status until a final order of removal and cannot "re-adjust" status to that

---

[48] *Id.* at 570 (noting that 8 U.S.C. § 1252(d)(1) prevents a court from reviewing an agency's final order of removal if the alien has not exhausted all administrative remedies as of right).

[49] *Robleto-Pastora v. Holder*, 591 F.3d 1051, 1054 (9th Cir. 2010).

[50] *Id.*

[51] *Id.* at 1058-59 (emphasis added) (footnote omitted).

15

of an LPR under section 209(b) in order to avoid removal.[52]

*Robleto-Pastora*, therefore, is distinguishable, as Siwe's status has never been adjusted to lawful permanent resident. Under the facts of that case, the Ninth Circuit was not asked to determine whether an asylee seeking to adjust status *for the first time* under Section 209(b) must maintain his asylum status to do so. *Robleto-Pastora*, consequently, also does not support the government's interpretation of Section 209(b).

Finally, we acknowledge the government's request to have the adjustment-of-status issue remanded to the BIA for further consideration and the issuance of a precedential opinion. According to the government, remand under *Ventura*[53] is appropriate because, given its expertise, the Board is best suited to analyze and rule on "the plain language of the statute."

*Ventura* "provides that a court of appeals should remand a case to an agency for a decision of a matter that statutes place primarily in agency hands,"[54] especially when "the BIA has not yet considered an issue"—such as interpreting immigration regulations in the first instance[55] or evaluating new evidence.[56] We have refused to remand a matter to the BIA under *Ventura*,

---

[52] *Id.* at 1060 (emphasis added).

[53] *INS v. Orlando Ventura*, 537 U.S. 12 (2002) (per curiam).

[54] *Dale v. Holder*, 610 F.3d 294, 301 (5th Cir. 2010) (quoting *Ventura*, 537 U.S. at 16) (internal quotation marks omitted).

[55] *Enriquez-Gutierrez v. Holder*, 612 F.3d 400, 414 (5th Cir. 2010).

[56] *Ventura*, 537 U.S. at 18.

however, when the Board had opportunities to consider specific factual or legal issues but elected to rule "on the basis of an erroneous application of the law."[57]

The BIA had two opportunities—first on appeal and again when Siwe moved for reconsideration—to address Siwe's legal contention that the termination of his asylum status did not render him ineligible for adjustment of status under Section 209(b). Furthermore, because the BIA rejected Siwe's motion to have his contention reconsidered by a three-member panel of the Board, it passed on the opportunity to issue a precedential opinion on the question. In sum, the Board had ample opportunities to address Siwe's legal arguments, but demurred. Thus, we may now review the pure question of law that Siwe presents *de novo*, with appropriate *Skidmore* deference, and reach our own conclusion.[58] *Ventura* does not mandate that we now remand this issue to afford the BIA "a third bite at [the] apple."[59]

When we review that question of law in light of the plain language of the statute, we are convinced that Siwe's construction of Section 209(b) is the correct one. We therefore grant Siwe's petition on this issue and hold that an

---

[57] *Zhu v. Gonzales*, 493 F.3d 588, 602 (5th Cir. 2007) (quoting *Eduard v. Ashcroft*, 379 F.3d 182, 196 (5th Cir. 2004)) (internal quotation marks omitted).

[58] As a result, the government's motion to remand is denied.

[59] *Zhu*, 493 F.3d at 602 ("In sum, the BIA has now had two opportunities to address the legal and factual issues that are again before this court; we need not give it a third bite at this apple. As there is no need or justification for further factual or legal development, we reverse the decision of the BIA, which was decided on the basis of an erroneous application of the law, and hold that Zhu is entitled to withholding of removal as a matter of law.") (footnote and internal quotation marks omitted).

No. 12-60546

alien, like Siwe, whose asylum has been terminated, is not prohibited from applying for adjustment of status under Section 209(b).[60]

## B.    Deferral of Removal under the CAT

An alternative ground for relief that would permit Siwe to remain in the United States is deferral of removal under the CAT.[61] The IJ denied CAT relief because she found his testimony "implausible" and because he "provided little corroborating evidence or other witnesses to substantiate his claims." The IJ concluded that Siwe failed to "establish that he will more likely than not be tortured if removed to Cameroon." Siwe counters that the IJ's factual findings

---

[60] We underscore that whether Siwe may in fact adjust status turns on how the reviewing official exercises his or her Section 209(c) discretion, either in Siwe's favor or against him.

[61] The Seventh Circuit recently has summarized the differences between withholding and deferral of removal under the CAT:

> Withholding of removal (under CAT) prohibits returning aliens to a specific country where they would face torture. It is a more secure form of protection than deferral of removal. It can be terminated only if [the Department of Homeland Security] establishes that an alien is not likely to be tortured in that country. . . .

> [Like withholding of removal,] [d]eferral of removal also prohibits returning aliens to a specific country where they would face torture. However, deferral of removal is granted to aliens who likely would face torture but who are ineligible for withholding of removal (under CAT), for example, certain criminals and persecutors.

> Deferral of removal is a more temporary form of protection. It can be terminated more quickly and easily if an alien no longer is likely to be tortured in the country of removal, or if the U.S. government receives assurances that the alien will not be tortured if returned.

*Wanjiru v. Holder*, 705 F.3d 258, 263-64 (7th Cir. 2013) (citing EOIR Fact Sheet, "Asylum and Withholding of Removal Relief, Convention Against Torture Protections," Jan. 15, 2009).

18

and credibility determination, and the Board's decision in affirming the IJ's denial of CAT relief are not supported by substantial evidence. Siwe thus urges us to grant his petition for review, insisting that "no reasonable adjudicator could have made the Immigration Judge's adverse credibility ruling."

As discussed above, because Siwe has an aggravated felony conviction, the REAL ID Act limits our jurisdiction in this case to a review of questions of law and constitutional challenges. [62] Siwe submits that, in denying his request for relief under the CAT, the IJ and BIA erred on an issue of fact, i.e., whether Siwe established that he will more likely than not be tortured if he is removed to Cameroon. As the REAL ID Act prevents us from reviewing such factual determinations, however, we may not reach Siwe's requested CAT relief.[63] Consequently, we dismiss Siwe's petition for review as to the CAT.

## C.   Reconsideration by a Three-Member Panel

Siwe raises a final point of error—in the alternative, should we not be inclined to remand on other bases—regarding the propriety of the BIA's procedure. In his motion for reconsideration before the BIA, Siwe requested review by a three-member panel, contending that his case satisfies the requirements set forth in 8 C.F.R. § 1003.1(e)(6).[64]   A one-member panel

---

[62] 8 U.S.C. § 1252(a)(2)(C); *see also Marquez-Marquez v. Gonzales*, 455 F.3d 548, 560-61 (5th Cir. 2006).

[63] *Escudero-Arciniega*, 702 F.3d at 785 ("Because we do not have jurisdiction to review factual determinations made pursuant to removal orders based upon an aggravated felony, we dismiss Escudero's petition for review of the BIA's denial of asylum, withholding, and protection under the CAT.").

[64] Siwe argued three-member consideration was appropriate because there was a need to "settle inconsistencies among the rulings of different immigration judges," 8 C.F.R. § 1003.1(e)(6)(i); "to establish a precedent construing the meaning of laws," 8 C.F.R. § 1003.1(e)(6)(ii); and to "review a decision by an immigration judge . . . that [was] not in conformity with the law," 8 C.F.R. § 1003.1(e)(6)(iii).

denied the motion; it did not address Siwe's request.  As a result, Siwe argues, the BIA abused its discretion, and he urges us to grant his petition and remand for further proceedings before a three-member panel.

We need not reach Siwe's request for reconsideration by a three-member panel in light of our decision to grant his petition and remand for further proceedings regarding Section 209(b).

### III.  CONCLUSION

We hold that Section 209(b)[65] is not ambiguous and that its plain wording does not require an alien to maintain his asylum status to apply for adjustment of status under the statute.  We therefore grant Siwe's petition for review as to this issue and vacate the BIA's decision ordering Siwe's removal. As we lack jurisdiction to consider Siwe's request for relief under the CAT, his petition for review as to that issue is dismissed.

DISMISSED IN PART, and VACATED IN PART and REMANDED for further proceedings consistent with this opinion.

---

[65] 8 U.S.C. § 1159(b).